No. 23-5058

# In the U.S. Court of Appeals for the District of Columbia Circuit

LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, *et al.*,
*Plaintiffs/Appellees,*

vs.

STEVEN FRID, in his capacity as the Executive Director of the United States
Election Assistance Commission, *et al.,*
*Defendants/Appellees,*

Public Interest Legal Foundation, *et al.,*
*Intervenors for Defendant/Appellees,*

Eagle Forum Education & Legal Defense Fund,
*Intervenor/Appellant.*

ON APPEAL FROM U.S. DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA, NO. 1:16-CV-236-RJL
HON. RICHARD J. LEON, U.S. DISTRICT JUDGE

## APPELLANT'S OPENING BRIEF

Lawrence J. Joseph, DC Bar #464777
Law Office of Lawrence J. Joseph
1250 Connecticut Ave., NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Appellants*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to FED. R. APP. P. 26.1 and Cir. Rule 26.1, Eagle Forum Education & Legal Defense Fund ("EFELDF") discloses that it is a nonprofit corporation registered under § 501(c)(3) of the Internal Revenue Code. EFELDF is an educational group that publishes—and collaborates with publishers of—materials on matters of public concern, including election integrity; EFELDF has long supported the use of documentary proof of citizenship to ensure that those who register to vote are eligible to vote. EFELDF has no parent corporation, and no publicly held company owns any stock in EFELDF.

Dated: August 21, 2023          Respectfully submitted,


/s/ Lawrence J. Joseph
Lawrence J. Joseph, D.C. Bar #464777

1250 Connecticut Ave, NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Appellant*

## CERTIFICATE ON PARTIES, RULINGS & RELATED CASES

Pursuant to Circuit Rule 28(a)(1), appellant Eagle Forum Education & Legal Defense Fund ("EFELDF") presents the following certificate as to parties and *amici curiae,* rulings, and related cases. By way of background, this appeal relates only to the District Court's denial of EFELDF's motion to unseal the record in the underlying dispute. This appeal pits intervenor-appellant EFELDF against the federal defendants-appellants (the only parties supporting the seal), with the other parties below having stated that they do not intend to participate.

A.    Parties and *Amici*

The parties and *amici curiae* are as follows:

1.    Intervenor-appellant EFELDF is the only appellant in this Court; in the district court, EFELDF was a limited-purpose intervenor to unseal the record. The plaintiffs below (nominal appellees here) are League of Women Voters of the United States, League of Women Voters of Alabama, League of Women Voters of Georgia, League of Women Voters of Kansas, Georgia State Conference of the NAACP, Georgia Coalition for the People's Agenda, Marvin Brown, and Joann Brown.

2.    Defendants-appellees U.S. Election Assistance Commission ("EAC") and its Executive Director, in his official capacity, appear to be the only *participating* appellees in this Court; they were defendants below. The defendants-

intervenors below (nominal appellees here) are the Public Interest Legal Foundation and the Kansas Secretary of State, in his official capacity. In addition to the parties listed here, EAC Commissioner Christy A. McCormick appeared below as an "Interested Party," but this Court has not included her in its case-initiating materials.

3. No *amicus curiae* has appeared in this Court; Landmark Legal Foundation appeared in the district court as *amicus* in the underlying litigation, without filing anything in connection with EFELDF's effort to unseal the record.

B.     Rulings under Review

The rulings under review are the district court's Minute Order (May 6, 2022, no ECF docket number) denying EFELDF access to the sealed record, Memorandum Order (November 14, 2022, ECF #188) denying EFELDF's motion to unseal, and Minute Order (Jan. 18, 2023, no ECF docket number) denying EFELDF's 's motion to reconsider and alter the judgment.

C.     Related Cases

There were two prior appeals (Nos. 16-5196, 19-7027). The first appeal concerned the merits of the parties' dispute, which are tangential to *this* appeal (*i.e.*, an effort to unseal the record). Specifically, the first appeal—which included a sealed supplemental appendix—and the underlying district-court litigation are relevant to whether the sealed materials qualify as "court records," but the underlying litigation

does not "involv[e] substantially the same parties and the same or similar issues" under Circuit Rule 28(a)(1)(C). The second appeal concerned the district court's denial of EFELDF's intervention, which relates to this appeal under the "mandate rule" if this Court's mandate implicitly contemplated that EFELDF would have access to the sealed record on remand for purposes of moving to unseal that record.

Dated: August 21, 2023      Respectfully submitted,

/s/ Lawrence J. Joseph
_____
Lawrence J. Joseph, D.C. Bar #464777

1250 Connecticut Ave, NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Appellant*

# TABLE OF CONTENTS

Corporate Disclosure Statement ...............................................................i

Certificate on Parties, Rulings & Related Cases.................................... ii

Table of Contents ....................................................................................v

Table of Authorities ............................................................................. vii

Glossary..................................................................................................xiv

Introduction .............................................................................................1

Jurisdiction ..............................................................................................1

Statement of Issues..................................................................................2

Statutes and Regulations .........................................................................3

Statement of the Case ..............................................................................3

    *Kobach*—Appeal of EAC's Action on the States' Post-*ITCA* Petitions .........4

    *Newby I*—Appeal of the Preliminary Injunction .............................................4

    *Newby II*—Appeal of the Denial of EFELDF's Intervention........................9

    Proceedings in District Court on Remand ......................................................9

Standard of Review ................................................................................11

Summary of Argument...........................................................................12

Argument................................................................................................14

I.    The seal order violates the common law right of access and the First
Amendment.................................................................................14

    A.    The First Amendment right of public access applies in civil cases. ...15

    B.    There is a strong presumption of public access to court records. .......16

    C.    The sealed records' importance derives from EAC's having
deceived the Tenth Circuit in *Kobach* and this Court in *Newby I*. .....17

        1.    On behalf of EAC, DOJ misled the Tenth Circuit in
*Kobach*. .................................................................................18

            a.    DOJ claimed deference for EAC's independent
expertise for DOJ's own work product. .........................19

            b.    DOJ's actions constituted fraud on the Tenth Circuit
in *Kobach*.................................................................................20

2. DOJ continued the deception by citing *Kobach* in *Newby I*.....23

3. This Court decided *Newby I* without regard to *Kobach*. ..........23

4. The sealed materials could be unsealed as a sanction for the EAC-DOJ deception. ................................................................24

D. The district court's seal order is not tailored, much less narrowly tailored.................................................................................25

1. Even if the claimed privileges apply to deposition *testimony*, Kansas's deposition *questions* are not privileged. ..26

2. For the deposition testimony, *Press-Enterprise* requires reviewing the testimony granularly for redactions. .................26

II. The district court violated this Court's mandate by denying EFELDF access to the sealed records. ..........................................................27

A. This Court's mandate granting EFELDF's intervention to seek to unseal the non-public record included EFELDF's access to the sealed records on remand. .................................................................27

B. EFELDF's acknowledgment that it "*can* brief" the unsealing issue without access does not estop EFELDF from arguing that the district court erred in denying EFELDF access. ................................29

C. EFELDF meets the tests under Rules 59(e) and 60(b)(1) to correct the district court's error in denying access to the sealed record. ........30

III. The *Hubbard* factors do not justify keeping the court records under seal. ...31

A. The public needs access to the documents...........................................32

B. The public had prior access to some of the sealed information. .........34

C. The lack of third-party objectors favors disclosure. ...........................36

D. The property and privacy interests that EAC and DOJ assert are weak to non-existent.................................................................................38

1. The attorney-client privilege does not apply. ...........................38

a. There is no relevant attorney-client relationship............40

b. The crime-fraud exception may nullify whatever privileges exist. ..............................................................42

c. DOJ did not establish the existence of attorney-client confidentiality..............................................................45

2. The attorney work-product doctrine does not apply.................46

       3.     The deliberative-process privilege does not apply. ...................47

E.    The risk of prejudice is overstated and unsupported...........................49

F.    The purpose for which Kansas introduced the sealed records is neutral. ...............................................................................................50

Relief Requested ................................................................................................53

Conclusion .........................................................................................................54

## TABLE OF AUTHORITIES

## CASES

*ACLU v. Holder*, 673 F.3d 245 (4th Cir. 2011) .......................................................15

*Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544 (Colo. 1988)...........................44

*Am. Council of the Blind v. Mnuchin*, 977 F.3d 1 (D.C. Cir. 2020) ................. 27-28

*Ameziane v. Obama*, 699 F.3d 488 (D.C. Cir. 2010)...............................................12

*Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F.Supp.2d 1 (D.D.C. 2010)...........25

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) .................................................1, 3-4, 8, 12, 18, 42-43, 45, 47

*Arpaio v. Robillard*, 459 F.Supp.3d 62 (D.D.C. 2020)...........................................25

*Arthur Andersen & Co. v. IRS*, 679 F.2d 254 (D.C. Cir. 1982)..............................49

*Aviva Life & Annuity Co. v. Federal Deposit Ins. Corp.*,
    654 F.3d 1129 (10th Cir. 2011) .......................................................................19

*Bennett v. Spear,* 520 U.S. 154 (1997) ...................................................................52

*Berger v. United States*, 295 U.S. 78 (1935) ..........................................................21

*Booth v. Fletcher*, 101 F.2d 676 (D.C. Cir. 1938)..................................................20

*Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421 (D.C. 2000)................................33

*Bowie v. Maddox*, 677 F.Supp.2d 276 (D.D.C. 2010)............................................44

*Brillhart v. Hudson*, 169 Colo. 329 (1969).............................................................20

*Buckley v. Valeo*, 424 U.S. 1 (1976).......................................................................50

*CBS, Inc. v. United States District Court*, 765 F.2d 823 (9th Cir. 1985)...............35

*Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*,
467 U.S. 837 (1984) ...............................................................20, 22

*Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661 (D.C. Cir. 2004) ..................31

*Citizens for Alternatives v. U.S. Dep't of Energy*,
485 F.3d 1091 (10th Cir. 2007) ........................................................23

*Citizens for Resp. & Ethics in Wash. v. FEC*,
711 F.3d 180 (D.C. Cir. 2013)............................................................42

*Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ......................23

*City of Arlington v. FCC*, 133 S.Ct. 1863 (2013) ....................................................22

\* *City of Cleveland v. Fed. Power Comm'n*, 561 F.2d 344 (D.C. Cir. 1977) ...........28

*CNN, Inc. v. FBI*, 984 F.3d 114 (D.C. Cir. 2021) ....................................................35

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980)........................................................46, 49

*Conservation Force v. Jewell*, 66 F.Supp.3d 46 (D.D.C. 2014)........................40, 46

*Consumer Energy Council v. Fed'l Energy Regulatory Comm'n*,
673 F.2d 425 (D.C. Cir. 1982)............................................................42

*Courthouse News Serv. v. Planet*, 947 F.3d 581 (9th Cir. 2020) ...........................15

*Depew v. Wichita Retail Credit Ass'n*, 141 Kan. 481 (1935)................................20

*Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002)................................15

*Dhiab v. Trump*, 852 F.3d 1087 (D.C. Cir. 2017) ................................................15

*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406 (D.C. Cir. 1996)............... 36-37

*Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008).................................. 19-20

*First Am. Corp. v. Al-Nahyan*, 2 F.Supp.2d 58 (D.D.C. 1998) ..............................24

*Freeport-McMoRan Oil & Gas Co. v. FERC*,
962 F.2d 45 (D.C. Cir. 1992)..............................................................21

*FTC v. Boehringer Ingelheim Pharms., Inc.*,
778 F.3d 142 (D.C. Cir. 2015)............................................................46

*Gannett Co. v. DePasquale*, 443 U.S. 368 (1979)................................................16

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982)............................17

*Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973 (D.C. Cir. 2016) ...........................32

\*   *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 3
     22 U.S. 238 (1944)............................................................ 21-23, 52

*Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346 (7th Cir. 2006).................................50

*Hickman v. Taylor*, 329 U.S. 495 (1947)......................................................46

*In re Application for Access to Video Exhibits*,
     575 F.Supp.3d 101 (D.D.C. 2021) .........................................35

*In re Dortch*, 860 A.2d 346 (D.C. 2004) ......................................................20

*In re Grand Jury*, 475 F.3d 1299 (D.C. Cir. 2007)............................................ 42-43

*In re Leopold*, 300 F.Supp.3d 61 (D.D.C. 2018) .......................................15

*In re Lindsey*, 148 F.3d 1100 (D.C. Cir. 1998)................................... 39-41

*In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998)................................... 40-41

*In re Marriage of Gance*, 36 P.3d 114 (Colo. App. 2001) ......................................44

*In re Nat'l Broad. Co.*, 635 F.2d 945 (2d Cir. 1980).............................................35

*In re Oliver*, 333 U.S. 257 (1948)........................................................16

*In re Papst Licensing GmbH & Co. KG Litig.*,
     791 F.Supp.2d 175 (D.D.C. 2011) ......................................33

*In re Sealed Case 00-5116*, 237 F.3d 657 (D.C. Cir. 2001) ....................................17

*In re Sealed Case*, 107 F.3d 46 (D.C. Cir. 1997) ...................................47

\*   *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) .............................41, 48

*In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982) ......................... 46-47

*In re Sealed Case*, 737 F.2d 94 (D.C. Cir. 1984) ......................... 39-41

*In re Sealed Case*, 754 F.2d 395 (D.C. Cir. 1985) ......................................43

*In re Shieh*, 738 A.2d 814 (D.C. 1999)...................................................33

*In re Snyder*, 472 U.S. 634 (1985)........................................................21

*In re Subpoena Duces Tecum Served on the Office of the Comptroller of the
     Currency*, 145 F.3d 1422 (D.C. Cir. 1998) ......................................48

*In re Subpoena Served upon Comptroller of Currency*,
     967 F.2d 630 (D.C. Cir. 1992).............................................48

*In re The Herald Co.*, 734 F.2d 93 (2d Cir. 1984)................................................35

*In re Vitamins Antitrust Litig.*, 398 F.Supp.2d 209 (D.D.C. 2005) .........................33

*Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588 (D.C. Cir. 2001) .............27

*Johnson v. Greater Southeast Community Hosp. Corp.*,
    951 F.2d 1268 (D.C. Cir. 1991)...................................................... 16-17

\* *Jones v. United States*, 828 A.2d 169 (D.C. 2003) ......................................39

*Joy v. North*, 692 F.2d 880 (2d Cir. 1982)...........................................53

*Judicial Watch, Inc. v. FDA*, 449 F.3d 141 (D.C. Cir. 2006) ...................................48

*Judicial Watch, Inc. v. Schiff*, 998 F.3d 989 (D.C. Cir. 2021)...............................34

\* *Kemp v. United States*, 142 S.Ct. 1856 (2022) .................................................13, 31

*Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933) ................. 24-25

\* *Kobach v. U.S. Election Assistance Comm'n*,
    772 F.3d 1183 (10th Cir. 2014) ...... 3-4, 8, 13-14, 17-24, 32-36, 44-45, 48-51

*La. Pub. Serv. Comm'n v. Fed. Energy Regulatory Comm'n*,
    184 F.3d 892 (D.C. Cir. 1999)...........................................................52

*Lazaridis v. U.S. Dep't of State*, 934 F.Supp.2d 21 (D.D.C. 2013)........................46

*League of Women Voters of the U.S. v. Harrington*,
    560 F.Supp.3d 177 (D.D.C. 2021) .....................................................7

*League of Women Voters of the U.S. v. Newby*,
    195 F.Supp.3d 80 (D.D.C. 2016) ......................................................7

*League of Women Voters of the U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016)......................... 1, 4, 7-8, 17-18, 23-24, 44. 48, 53

\* *League of Women Voters of the U.S. v. Newby*,
    963 F.3d 130 (D.C. Cir. 2020)................................. 1-2, 9, 14, 30

*Leopold v. United States*, 964 F.3d 1121 (D.C. Cir. 2020) .....................................14

*Local No. 93, Int'l Ass'n of Firefighters, etc. v. Cleveland*,
    478 U.S. 501 (1986) ...................................................................28

*Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344 (D.C. Cir. 1998).....................42

*McDevitt v. Wells Fargo Bank, N.A.*, 946 F.Supp.2d 160 (D.D.C. 2013)..............33

*Mead Data Central, Inc. v. U.S. Dept. of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977)...........................................................45

*MetLife, Inc. v. Fin. Stability Oversight Council*,
    865 F.3d 661 (D.C. Cir. 2017)...........................................................16

*Mid-Tex Elec. Coop., Inc. v. FERC*, 822 F.2d 1123 (D.C. Cir. 1987) ...................28

*Mistretta v. United States*, 488 U.S. 361 (1989) ....................................................22

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983) .............................................................52

*Mott v. Kerns*, 825 F.2d 411 (6th Cir. 1987) ........................................33

*Nixon v. Warner Commc'ns*, 435 U.S. 589 (1978) .................................16

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ..............................47

*Pacific Northwest Newspaper Guild v. NLRB*,
 877 F.2d 998 (D.C. Cir. 1989) .......................................................52

*Perioperative Servs. & Logistics, LLC v. VA*,
 57 F.4th 1061 (D.C. Cir. 2023) ......................................................34

\*    *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ............ 12, 15-16, 25-26

*Reynolds v. Sims*, 377 U.S. 533 (1964) ................................................16

*Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980) .......................17

*Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259 (10th Cir. 1995).....................44

*Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007 (D.C. Cir. 1985) ..........27

*SEC v. FLRA*, 568 F.3d 990 (D.C. Cir. 2009) .......................................42

\*    *Seese v. Volkswagenwerk, A.G.*, 679 F.2d 336 (3d Cir. 1982) ........................ 29-30

*Sierra Club v. Costle*, 657 F.2d 298 (D.C. Cir. 1981) ...............................42

*Swidler & Berlin v. United States*, 524 U.S. 399 (1998) .........................39

*Synanon Found., Inc. v. Bernstein*, 503 A.2d 1254 (D.C. 1986)............................44

*Tax Analysts v. I.R.S.*, 117 F.3d 607 (D.C. Cir. 1997)..............................41

*Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*,
 60 F.3d 867 (1st Cir. 1995) ..........................................................41

*Texas v. United States*, 279 F.R.D. 24 (D.D.C. 2012),
 *vacated on other grounds*, 570 U.S. 928 (2013) ............................46

*Theodore Roosevelt Conservation P'ship v. Salazar*,
 616 F.3d 497 (D.C. Cir. 2010).......................................................23

*Trammel v. United States*, 445 U.S. 40 (1980)......................................39

*United States v. All Assets Held at Bank Julius Baer & Co.*,
 520 F.Supp.3d 71 (D.D.C. 2020) ............................................ 49-51

*United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285 (D.C. Cir. 1980) .................45

*United States v. Brit. Am. Tobacco Australia Servs., Ltd.*,
    437 F.3d 1235 (D.C. Cir. 2006)......................................................28

*United States v. Cojab*, 996 F.2d 1404 (2d Cir. 1993) ...........................26

*United States v. El-Sayegh*, 131 F.3d 158 (D.C. Cir. 1997) ....................12

\*   *United States v. Hubbard*,
    650 F.2d 293 (D.C. Cir. 1980)........................ 13, 17, 24, 27, 30-53

*United States v. James*,
    2021 U.S. Dist. LEXIS 235358 (D.D.C. Aug. 23, 2021)......................... 35-36

*United States v. Kiefer*, 228 F.2d 448 (D.C. Cir. 1955)...........................44

*United States v. Kpodi*, 888 F.3d 486 (D.C. Cir. 2018).........................28

*United States v. Mejia*, 448 F.3d 436 (D.C. Cir. 2006) ..........................12

*United States v. Myers*, 635 F.2d 945 (2d Cir. 1980) .............................35

*United States v. Reid*, 533 F.2d 1255 (D.C. Cir. 1976) ...........................43

*United States v. Thomas*, 840 F.Supp.2d 1 (D.D.C. 2011) ...............38, 53

*United States v. Thompson*,
    17 Media L. Rep. 1004 (D.C. Cir. Oct. 13, 1989)...........................35

*United States v. White*, 751 F.Supp.2d 173 (D.D.C. 2010) ....................28

*United States v. Williams*, 952 F.2d 418 (D.C. Cir. 1991) ......................21

*United States v. Zolin*, 491 U.S. 554 (1989) ........................................43

*Universal Health Servs. v. United States ex rel. Escobar*,
    579 U.S. 176 (2016) ...............................................................44

*W. Watersheds Project v. Bureau of Land Mgmt.*,
    721 F.3d 1264 (10th Cir. 2013) ................................................19

*Washington Inv. Ptnrs. of Del., LLC v. Securities House*,
    28 A.3d 566 (D.C. 2011) ..................................................... 43-44

*Washington Legal Clinic for the Homeless v. Barry*,
    107 F.3d 32 (D.C. Cir. 1997)....................................................50

*Washington Legal Found. v. United States Sentencing Comm'n*,
    17 F.3d 1446 (D.C. Cir. 1994)..................................................34

*Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991).........14, 25

*Wilderness Soc'y v. U.S. Dep't of Interior*,
    344 F.Supp.2d 1 (D.D.C. 2004) ...............................................48

*Wilson v. Arkansas*, 514 U.S. 927 (1995) .................................................17

## STATUTES

U.S. Const. art. I, § 2, cl. 2 ...............................................................3

U.S. Const. art. I, § 4, cl. 2 ...............................................................3

U.S. Const. amend. I ................................... 2-3, 12, 14-15, 17, 25-26, 34

Administrative Procedure Act,
    5 U.S.C. §§ 551-706 ..............................................4, 12, 16, 48

5 U.S.C. § 706 ...........................................................................48

Freedom of Information Act,
    5 U.S.C. § 552 ....................................................................34

5 U.S.C. § 552(a)(4)(A)(iii) ...........................................................34

28 U.S.C. § 1291 ..........................................................................2

28 U.S.C. § 1331 ..........................................................................2

National Voter Registration Act,
    52 U.S.C. §§ 20501-20511 ........................................................

52 U.S.C. § 20508(a)(2) ...............................................................

Help America Vote Act of 2002,
    52 U.S.C. §§ 20901-21145 ........................................................

52 U.S.C. § 20928 ......................................................................

K.S.A. § 25-2309(l) .......................................................................4

## RULES AND REGULATIONS

Fed. R. App. P. 46(c) ...................................................................21

Fed. R. Civ. P. 59(e) ........................................................ 11, 13, 30-31

Fed. R. Civ. P. 60(b)(1) ..................................................... 11, 13, 30-31

D.C. Circuit Rule 28(a)(2) ..............................................................23

Rules of Disciplinary Enforcement for the United States Court of Appeals for
    the District of Columbia Circuit, Rule 1(b) ....................................21

D.D.C. Local Civil Rule 7 ..............................................................54

D.D.C. Local Civil Rule 7(a) ...........................................................11

D.D.C. Local Civil Rule 7(e) ...........................................................11

## OTHER AUTHORITIES

Stephen Breyer, *Judicial Review of Questions of Law and Policy*,
38 ADMIN. L. REV. 363 (1986) .................................................................22

Internet Movie Database, *Weekend at Bernie's* (Metro-Goldwyn-Mayer
Studios Inc. 1989) ............................................................................18

## GLOSSARY

| APA | Administrative Procedure Act |
|---|---|
| DOJ | U.S. Department of Justice |
| EAC | U.S. Election Assistance Commission |
| ECF | Electronic Case Filing |
| EFELDF | Eagle Forum Education & Legal Defense Fund |
| FEC | Federal Election Commission |
| FOIA | Freedom of Information Act, 5 U.S.C. § 552 |
| *ITCA* | *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) |
| JA:## | Deferred Joint Appendix, page ## |
| NVRA | National Voter Registration Act, 52 U.S.C. §§ 20501-20511 |
| R.## | District Court Record, Docket or ECF Item ## |

## INTRODUCTION

The underlying litigation concerns a question left unresolved by *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ("*ITCA*"), namely whether the National Voter Registration Act, 52 U.S.C. §§ 20501-20511 ("NVRA") preempts the States from requiring documentary proof of citizenship as part of the voter-registration process. That case was before this Court in No. 16-5196 on the issue of interim relief in the underlying litigation. *See League of Women Voters of the U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ("*Newby I*"). An *amicus curiae* in that litigation, Eagle Forum Education & Legal Defense Fund ("EFELDF") moved to intervene for the limited purpose of unsealing a portion of the record that a protective order (JA:__) prohibits the parties from disclosing to the public. In *League of Women Voters of the U.S. v. Newby*, 963 F.3d 130 (D.C. Cir. 2020) ("*Newby II*"), this Court reversed the district court's denial of EFELDF's intervention and remanded for the district court to determine whether the record should be unsealed. On remand, notwithstanding EFELDF's status as an intervenor, the district court denied EFELDF access to the sealed record and denied EFELD's motion to unseal.

## JURISDICTION

In a Memorandum Order dated November 14, 2022 (JA:__; R:188) the district court denied EFELDF's renewed motion to unseal the record, and by Minute Order dated January 18, 2023 (JA:__), the district court denied EFELDF's timely motion

to amend the judgment and to reconsider. The District Court had federal-question jurisdiction, 28 U.S.C. § 1331, over the underlying litigation, including EFELDF's motion to unseal the record under the First Amendment and common-law rights of access to court records. On March 17, 2023, EFELDF noticed this appeal (JA:__; R.194). Under 28 U.S.C. § 1291, this Court has jurisdiction over the district court's order denying EFELDF's motion to unseal and related orders.

## STATEMENT OF ISSUES

This appeal presents the following issues:

(1)     Whether the district court's Order partially sealing the case complied with the First Amendment and public right of access, including not only the propriety of sealing materials at all, but also the lesser alternative of selective redactions instead of a blanket seal?

(2)     Whether the district court's denying EFELDF access to the sealed materials in this case complied with the First Amendment and this Court's mandate (and the spirit of that mandate) in *Newby II*, which granted EFELDF's intervention for purposes of unsealing the record?

(3)     Whether the district court erred in denying EFELDF's motion to unseal the case in whole or in part?

(4)     Whether the district court erred in denying EFELDF's motion to reconsider and to alter the judgment?

## STATUTES AND REGULATIONS

This action is based on common law and on the First Amendment. The latter

provides as follows:

> Congress shall make no law respecting an establishment
> of religion, or prohibiting the free exercise thereof; or
> abridging the freedom of speech, or of the press; or the
> right of the people peaceably to assemble, and to petition
> the government for a redress of grievances.

U.S. CONST. amend. I.

## STATEMENT OF THE CASE

Following the Supreme Court's decision in *ITCA*, the underlying litigation

concerns the States' ability to enforce their constitutional control over voter

qualifications, U.S. CONST. art. I, § 2, cl. 2, *vis-à-vis* the voter-registration

requirements of the NVRA and the Help America Vote Act of 2002, 52 U.S.C.

§§ 20901-21145 ("HAVA"), which Congress enacted under its Elections Clause

authority to regulate the time, place, and manner of federal elections. U.S. CONST.

art. I, § 4, cl. 2. The post-*ITCA* administrative and litigation efforts took place in two

primary cases: (1) the "*Kobach*" litigation in Kansas and the Tenth Circuit to force

the Election Assistance Commission ("EAC") to act on the States' administrative

petitions contemplated by *ITCA*; and (2) the "*Newby*" litigation in this Circuit over

EAC's approval of state-specific requirements on the "Federal Form" that EAC

maintains under the NVRA. 52 U.S.C. § 20508(a)(2).

### _Kobach_—Appeal of EAC's Action on the States' Post-_ITCA_ Petitions

Following the Supreme Court's _ITCA_ decision, several States petitioned EAC to allow use of documentary proof of citizenship, which EAC denied and the Tenth Circuit upheld in _Kobach v. U.S. Election Assistance Comm'n_, 772 F.3d 1183 (10th Cir. 2014). A declaration by EAC's now-former Executive Director (JA:__) here states that the Department of Justice ("DOJ") ghostwrote the EAC actions for a then-dormant EAC, which DOJ defended as the expert workproduct of a non-partisan, independent agency. Newby Decl. at 2 (¶ 22) (JA:__); Joseph Decl. at 5 (¶¶ 13-14) (JA:__). As explained in Section I.C.1, _infra_, DOJ affirmatively cited the Tenth Circuit's need to defer to that expert work product—which actually was DOJ's own work product—without disclosing DOJ's role in drafting the petition denials.

### _Newby I_—Appeal of the Preliminary Injunction

Acting through the ministerial action of its Executive Director, EAC approved the inclusion in the state-specific instructions for the "Federal Form" of state-law requirements that applicants seeking to register to vote provide evidence of their U.S. citizenship. _See, e.g._, K.S.A. § 25-2309(l). Various plaintiffs, including the League of Women Voters, several state League chapters, and other organizations (collectively, the "Leagues") challenged EAC's action for violating not only NVRA but also the Administrative Procedure Act, 5 U.S.C. §§ 551-706 ("APA"). DOJ took the unusual position of supporting the Leagues against its ostensible clients. The

Kansas Secretary of State and a public-interest group intervened to defend the State's interest in EAC's action.

The Leagues' complaint sets out five alternate bases for invaliding EAC's approval of the States' proof-of-citizenship requirements to the state instructions on the Federal Form: (1) pursuant to HAVA § 208, 52 U.S.C. § 20928, the States' requests required approval by a majority of EAC's commissioners, not by the Executive Director, Compl. ¶¶ 70-74 (JA:__, R.001); (2) the Executive Director's action reverses EAC policy as to proof-of-citizenship requirements, thus violating EAC's policies on the Executive Director's authority to act without action by the commissioners, *id.* ¶¶ 75-78 (JA:__, R.001); (3) reversing EAC policy required the Executive Director to undergo notice and comment rulemaking, *id.* ¶¶ 83-86 (JA:__, R.001); (4) the Executive Director acted arbitrarily and capriciously by departing from what the Leagues purport to be EAC's "longstanding policy and legal determination that documentary proof of citizenship was not 'necessary' within the meaning of the NVRA" without explaining the alleged departure adequately, *id.* ¶¶ 87-91 (JA:__, R.001); and (5) the Executive Director acted arbitrarily and capriciously by failing to find the States' proof-of-citizenship requirements "necessary" under the NVRA before granting the States' requests, *id.* ¶¶ 92-96 (JA:__, R.001).

In a notice of deposition filed on February 29, 2016, Kansas indicated four

topics for its deposition of Election Assistance Commissioner Christy A. McCormick on March 2, 2016:

> (1) The decision of the EAC's acting director rejecting Kansas's and Arizona's 2013 requests for modification of the state-specific instructions of the Federal Form and the circumstances surrounding that decision, including any documentary evidence thereof in the possession of the deponent,

> (2) The procedures used by the EAC for addressing state requests to modify state-specific instructions of the Federal Form,

> (3) Routine communications by EAC commissioners with Secretaries of State, in the context of whether such communication constitutes forbidden "ex parte" communication in the understanding of the EAC.

> [4] The implementation of the EAC's delegation of authority to the Executive Director to make modifications to the Federal Form.

Notice of Rule 30 Deposition, at 2 (Feb. 29, 2016) (JA:__, R.038). In response to that notice, DOJ filed an unopposed motion asking the District Court prophylactically "to protect *potentially* privileged information," Fed. Defs.' Mot for Protective Order, at 1 (emphasis added) (JA:__, R.039),[1] in advance of the deposition.

In response to the then-unopposed motion, the district court issued the

---

[1]    In a notice (JA:__, R.040) filed later that day, DOJ clarified that its motion was unopposed.

following protective order:

> Upon consideration of the federal defendant's 39 Motion for Protective Order; it is hereby ordered that the motion is GRANTED; and it is further ordered that no party or individual may publicly disclose, on this court's docket or otherwise, any documents of information disclosed by Christy A. McCormick, Commissioner, U.S. Election Assistance Commission, for which a party asserts a claim of privilege, until after the court has ruled on any privilege dispute.

*League of Women Voters of the U.S. v. Newby*, No. 1:16-cv-236-RJL (D.D.C. Mar. 2, 2016) (JA:__, R.042). Procedurally, the District Court had not yet "ruled on any privilege dispute," *id.*, and the parties never briefed the viability of DOJ's claims of privilege, much less applied those claims to specific documents (or portions thereof) over which DOJ asserts privilege.

Decisions by this Court and the district court on the Leagues' motion for a preliminary injunction and the district court on summary judgment further outline the background of this litigation. *Newby I*, 838 F.3d at 4-6; *League of Women Voters of the U.S. v. Newby*, 195 F.Supp.3d 80, 83-88 (D.D.C. 2016); *League of Women Voters of the U.S. v. Harrington*, 560 F.Supp.3d 177, 185-86 (D.D.C. 2021). As relevant to EFELDF's motion to unseal the record, both the district court and appellate proceedings included sealed appendices. *See*, *e.g.*, Public Interest Legal Foundation's Sealed Motion for Leave to File Document under Seal (JA:__, R.049); Public Interest Legal Foundation's Sealed Motion for Leave to File Document under

Seal (JA:__, R.050); Kansas Sec'y of State's Sealed Motion for Leave to File Document under Seal (JA:__, R.051);[2] *see also* Public Appendix Volume 1 (JA-1-417)—Sealed Material in Separate Supplement, *League of Women Voters v. Newby*, No. 16-5196 (D.C. Cir.) (ECF #1625106). Moreover, the sealed materials were not simply "dumped" into an appendix: the sealed evidence concerns the validity of post-*ITCA* EAC action and thus goes to the very validity of the EAC precedent on which plaintiffs seek to rely. *See* Compl. ¶¶1-3, 31, 33-35 (JA:__, R.001).

Under the heading that "The Executive Director's Decision was not Inconsistent with Procedural Requirements of the Statute or any EAC Procedure," Kansas's *Newby I* brief included a 14-line paragraph—which was redacted in the public version—arguing that EAC had complied with its procedures. Kansas Br. at 42, *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) (No. 16-5196) (JA:__). Similarly, Kansas cited the sealed materials to bolster the Newby Declaration on DOJ's having ghostwritten EAC's denial of the State petitions at issue in *Kobach*. *See* Kansas Br. at 8, *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) (No. 16-5196) (JA:__).

---

[2]     EFELDF lists these three sealed items from the preliminary injunction briefing as examples of the sealed record; many other documents were also sealed. *See* JA:__-__, __-__ (docket entries for ECF #53, 56, 60-61, 75, 78, 81, 83-85, 87).

### *Newby II*—Appeal of the Denial of EFELDF's Intervention

On March 16, 2017, EFELDF moved to intervene for the limited purpose of moving to unseal the record. JA:__, R.135. As EFELDF explained below, the sealed information goes to both the merits (*e.g.*, whether EAC reversed a valid EAC precedent with insufficient administrative process) and the constitutional and prudential limits on the propriety of this Courts' allowing this litigation to proceed (*e.g.*, the lowered threshold under Article III for immediacy with procedural violations and the prudential considerations against a court's hearing "friendly suits"). *See* EFELDF Memo. at 2-7 (JA:__, R.135-3); EFELDF Reply at 1-7 (JA:__, R.139). The sealed materials also went to the merits, Pls.' Memo. in Support of Cross-Mot. for Summ. J. & Opp'n to Defs.' Mot. for Partial Summ. J., at 45-45 (JA:__, R.102); Pls.' Post-Remand Reply, at 3 (JA:__, R.154), although the case was ultimately decided against EAC and for the plaintiffs on a threshold issue (namely, the lack of a required EAC necessity finding) that did not require resort to the sealed material.

### Proceedings in District Court on Remand

On remand from this Court's *Newby II* decision allowing EFELDF's limited-purpose intervention to unseal the record, the district court ordered the parties "meet and confer and submit to the Court a joint status report regarding the status of proceedings on intervenor Eagle Forum Education & Legal Defense Fund's [R:135]

motion to unseal the record in light of this Court's August 31, 2020 Minute Order

permitting Eagle Forum Education & Legal Defense Fund to intervene for the

limited purpose of seeking to unseal references to the McCormick deposition and

the September 16, 2021 182 Memorandum Opinion and 183 Order." Minute Order

(Feb. 10, 2022) (JA:__). In response to that Minute Order, EFELDF requested access

to the sealed record:

> EFELDF submits that it should be permitted access to the
> sealed materials under the current protective order (*i.e.*,
> EFELDF would be bound by the protective order, and
> disclosure to EFELDF would not violate the order as
> public disclosure). While EFELDF does not dispute that a
> limited-purpose intervenor *can* brief the unsealing of
> documents the intervenor has not seen, EFELDF's
> briefing of these issues would be more illuminating if
> EFELDF could contest Defendants' claims of good faith
> after EFELDF has reviewed what Defendants seek to keep
> from public disclosure.

Joint Status Report, 2 (Apr. 11, 2022) (emphasis in original) (JA:__).

In response to the Joint Status Report, the district court denied EFELDF

access to the sealed record, notwithstanding that the protective order prohibited only

the disclosure of sealed materials to the public, JA:__, and allowed truncated briefing

of the unsealing issue:

> Upon consideration of the parties' [R:184] Joint Status
> Report, it is hereby ORDERED that intervenor Eagle
> Forum Education & Legal Defense Fund's request to
> access the sealed materials in order to prepare further
> briefing on its 135 motion to unseal the record is hereby
> DENIED. It is further ORDERED that intervenor Eagle

> Forum Education & Legal Defense Fund is permitted to file a renewed motion to unseal within 30 days of this Minute Order …[.] The principal memorandums shall not exceed 15 pages, and the reply shall not exceed 10 pages.

Minute Order, at 1 (May 6, 2022) (JA:__).[3] After EFELDF and EAC briefed the unsealing issues, the district court denied EFELDF's motion in a Memorandum Order dated November 14, 2022 (JA:__).

On December 12, 2022, EFELDF moved pursuant to Rules 59(e) and 60(b)(1) to alter the judgment and for reconsideration, FED. R. CIV. P. 59(e), 60(b)(1), to seek the following relief: (1) vacate the Memorandum Order dated November 14, 2022 (R:188); (2) vacate the Minute Order dated May 6, 2022, with respect EFELDF's access to the sealed materials—whether from the Clerk or from another party— subject to the terms of the protective order (R:42); and (3) allow EFELDF to file a renewed motion to unseal pursuant to Local Civil Rule 7(a) and 7(e) within 30 days. JA:__. By Minute Order dated January 18, 2023, the district court denied EFELDF's motion (JA:__). This appeal followed.

## STANDARD OF REVIEW

Appellate courts review district court's decision to seal or unseal documents, or to issue or refuse to issue a protective order, for abuse of discretion, which includes *de novo* review of legal issues on which the district court relied in exercising

---

[3] The local rules provide 45 pages for memoranda in support of and opposition to motions and 25 pages for replies. *See* Local Civil Rule 7(e).

its discretion. *Ameziane v. Obama*, 699 F.3d 488, 494 (D.C. Cir. 2010); *see also United States v. Mejia*, 448 F.3d 436, 456-57 (D.C. Cir. 2006) (reviewing issuance of protective order *de novo* because court applied incorrect legal standard); *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997). "A district court by definition abuses its discretion when it makes an error of law." *Ameziane v. Obama*, 699 F.3d at 494 (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

## SUMMARY OF ARGUMENT

As judicial records, the sealed materials fall under a strong presumption of public access, *see* Section I.B, which includes not only the common law but also the First Amendment under the two-part test in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986), for First Amendment access to court records: (1) a history of public access to court records in civil litigation generally and to APA litigation specifically; and (2) public access plays a significant positive role in the functioning of APA litigation. *See* Section I.A. At least in part, the sealed material goes to the degree to which DOJ commandeered EAC in 2014 to deny the States' post-*ITCA* petition, which the public has an urgent need to know. *See* Section I.C. If nothing else, EAC and DOJ cannot claim privilege over Kansas's deposition *questions*, even if every word of the deponent's deposition *testimony* improbably were privileged, *see* Sections I.D.1, with paragraph- and word-level redactions constituting the narrow tailoring required by the First Amendment. *See* Section I.D.2.

Because the protective order prohibited disclosing the sealed materials only *to the public*, EFEDLF's intervention authorized the Clerk or any party to disclose the sealed materials *to EFELDF*. *See* Section II.A. By denying EFELDF that access, the district court denied the spirit of this Court's mandate, which the district court lacked jurisdiction to do under the "mandate rule." *See* Section II.B. The change in law under *Kemp v. United States*, 142 S.Ct. 1856 (2022), in June of 2022 was an intervening change in the law that warranted relief under both Rules 59(e) and 60(b)(1) for the district court's clear error in May of 2022. *See* Section II.C.

Under this Circuit's six-factor test for unsealing materials, *United States v. Hubbard*, 650 F.2d 293, 316-17 (D.C. Cir. 1980), this Court should unseal at least *some* of the sealed materials, *see* Sections III.A-III.F (discussing *Hubbard* factors), unless the Court determines that it can unseal *the entire record* as a sanction or for the unclean hands of misleading the Tenth Circuit in *Kobach*, *see* Section I.C.4, or because DOJ's role as a "dual hat adviser" means that the privileges that DOJ claims do not cover DOJ's work secretly to ghostwrite EAC policy decisions. *See* Section III.D.1.

Assuming *arguendo* that the Court must apply the *Hubbard* factors, the Court should find that the public needs to know about DOJ's deception in *Kobach* (Section III.A), the sealed materials corroborate the Newby Declaration already in the public docket (Section III.B), a party's objections are weaker than third-parties' objections

(Section III.C), EAC and DOJ lack a strong claim to privilege either because the "dual hat advisor" status denies an attorney-client relationship or because the crime-fraud exception vitiates the privileges for DOJ's deception in *Kobach* (Sections III.D.1-III.D.3), DOJ fails to establish a risk of systemic prejudice from denying privilege in this very unusual case involving fraud on the court (Section III.E), and Kansas offered the sealed material to influence the court, even though this Court ultimately decided the case on a different threshold issue (Section III.F).

## ARGUMENT

## I. THE SEAL ORDER VIOLATES THE COMMON LAW RIGHT OF ACCESS AND THE FIRST AMENDMENT.

This Court has already determined that the sealed records qualify as judicial records, *Newby II*, 963 F.3d at 136, which creates a strong presumption of public access under both the common law and the First Amendment. Although this Court might avoid the constitutional question by ruling *for EFELDF*, *see*, *e.g.*, *Leopold v. United States*, 964 F.3d 1121, 1126-27 (D.C. Cir. 2020) (avoiding First Amendment issue where common law and First Amendment afforded the same relief), the First Amendment affords greater procedural protections, *Washington Post v. Robinson*, 935 F.2d 282, 292 (D.C. Cir. 1991) (requiring prior notice of a seal and on-the-record judicial findings justifying a seal), that the district court's seal order violated. As explained in Section III, *infra*, DOJ cannot rebut that strong presumption of public access here. In this Section, EFELDF establishes the sealed information's public

importance and the district court's failure to meet the tests for sealing information.

**A.**     **The First Amendment right of public access applies in civil cases.**

"Neither the Supreme Court nor this Court has applied the First Amendment right of access outside the context of criminal judicial proceedings or the transcripts of such proceedings." *Dhiab v. Trump*, 852 F.3d 1087, 1092 n.10 (D.C. Cir. 2017) (internal quotations omitted). But neither the Supreme Court nor this Court has held that the First Amendment *does not* apply in civil cases.[4] Other circuits have held that the First Amendment right of access applies in civil cases. *See*, *e.g.*, *ACLU v. Holder*, 673 F.3d 245, 252 (4th Cir. 2011) (citing decisions from the Fourth and Second Circuits); *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 705 (6th Cir. 2002); *Courthouse News Serv. v. Planet*, 947 F.3d 581, 585 (9th Cir. 2020); *see also In re Leopold*, 300 F.Supp.3d 61, 81 (D.D.C. 2018) (recognizing extra-Circuit appellate authority). This Court should join its extra-Circuit appellate colleagues to recognize a First Amendment right of access to civil litigation.

Under the two-part *Press-Enterprise* test for attaching First Amendment rights

---

[4]     *Dhiab* rejected a First Amendment right of access in a civil habeas proceeding, but *Dhiab* involved the national-security context, in which there was "no tradition of publicizing secret national security information involved in civil cases, or for that matter, in criminal cases." *Id.* at 1994.

of access to judicial proceedings,[5] public access is clear. First, the history of public access to court records extends to both civil and criminal matters. *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979). Second, this case—about federal versus State power over election qualifications—bears out that "in some civil cases the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases." *Id.*; *see also In re Oliver*, 333 U.S. 257, 270 n.24 (1948) (discussing benefits of public trials such as drawing out witnesses and teaching the public about government and judicial remedies in a civil habeas proceeding); *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (describing common law right of access as fundamental to democracy in a civil APA suit). As relevant here, the "political franchise of voting" is "a fundamental political right, because preservative of all rights," *Reynolds v. Sims*, 377 U.S. 533, 562 (1964) (internal quotations omitted).

## B. There is a strong presumption of public access to court records.

There is a "strong presumption in favor of public access to judicial proceed-ings." *Johnson v. Greater Southeast Community Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991); *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597-98 (1978). "[A]

---

[5] *Press-Enterprise*, 478 U.S. at 8 ("we have considered whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question").

major purpose of [the First] Amendment was to protect the free discussion of governmental affairs," *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604 (1982) (interior quotation omitted), which "has long been recognized as an indispensable attribute of an Anglo-American trial." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 569 (1980). The English common law—on which our legal system is based, *Wilson v. Arkansas*, 514 U.S. 927, 933-34 (1995)—recognized "the importance of openness to the proper functioning of a trial; it gave assurance that the proceedings were conducted fairly to all concerned, and it discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality." *Richmond Newspapers*, 448 U.S. at 569. In deciding whether to affirm the judicial records to remain sealed, this Court must consider the strong presumption favoring disclosure, using the six-factor *Hubbard* test to determine whether a claim overcomes the presumption of public access. *In re Sealed Case 00-5116*, 237 F.3d 657, 666 (D.C. Cir. 2001); *Greater Southeast Community Hosp.*, 951 F.2d at 1277 (applying *Hubbard* to civil cases).

## C. The sealed records' importance derives from EAC's having deceived the Tenth Circuit in *Kobach* and this Court in *Newby I*.

The sealed records bolster the Newby Declaration by showing that DOJ—not EAC—wrote the petition denial addressed in *Kobach* in the Tenth Circuit, *see* JA:__ (redacted excerpt of Kansas brief in *Newby I*), notwithstanding that DOJ defended the petition denial as the work of an expert independent agency. *See* Section I.C.2,

*infra*. By citing *Kobach* in *Newby I*, without disclosing that deception, EAC risked deceiving this Court as well. In the end, this Court decided *Newby I* on an issue that did not turn on *Kobach* (*i.e.*, the deception was not material), but this Court could unseal the judicial records as a sanction.

1.  **On behalf of EAC, DOJ misled the Tenth Circuit in *Kobach*.**

After *ITCA* identified the administrative process for the States to bring a timely challenge to an EAC denial of requested changes to the state-specific sections of the Federal Form, Kansas and Arizona petitioned EAC to make the changes, which were deferred because EAC lacked a quorum. *Kobach*, 772 F.3d at 1188-89. After the U.S. District Court for the District of Kansas ordered EAC to act on the States' petitions, EAC—acting through the former Acting Executive Director, Alice Miller, but still with no quorum—sought and received public comment, and eventually denied the requests. *Id.* As the States have made clear here, however, Miller farmed the analysis and response out to DOJ lawyers, who—borrowing from the script of *Weekend at Bernie's*—masqueraded as a functioning EAC.[6]

Although Kansas prevailed in its challenge to EAC's denial in district court, DOJ filed an appeal to the Tenth Circuit, where EAC prevailed. *Kobach*, 772 F.3d

---

[6]   According to the Internet Movie Database, *Weekend at Bernie's* (Metro-Goldwyn-Mayer Studios Inc. 1989), involves two employees who must pretend that their dead boss is still alive. http://www.imdb.com/title/tt0098627/ (last visited Aug. 21, 2023).

at 1183. In pressing that appeal, DOJ argued that courts should defer to EAC's expert analysis, without disclosing that DOJ—not EAC—authored that analysis.

### a. DOJ claimed deference for EAC's independent expertise for DOJ's own work product.

In claiming deference before the Tenth Circuit, DOJ cited *W. Watersheds Project v. Bureau of Land Mgmt.*, 721 F.3d 1264, 1273 (10th Cir. 2013),[7] in which the Tenth Circuit ties deference to "technical or scientific matters within the agency's area of expertise." 721 F.3d at 1273. DOJ also invoked the special deference due to "*the Commission's* interpretation of its *own* regulations." Fed. *Kobach* Reply Br. at 17 (emphasis added, *citing Aviva Life & Annuity Co. v. Federal Deposit Ins. Corp.*, 654 F.3d 1129, 1132 (10th Cir. 2011)) (JA:__). The "highly deferential" review that DOJ claimed, *id.* at 19 (*citing Aviva*, 654 F.3d at 1131) (JA:__), is premised on an agency's expertise in the field in which Congress has delegated authority to the agency, especially when acting under that agency's own rules. *Aviva*, 654 F.3d at 1132 (*citing Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 397 (2008)).

As the Supreme Court put it in *Holowecki*, "[j]ust as we defer to an agency's reasonable interpretations of the statute when it issues regulations in the first

---

[7]     *See* Reply Brief for the United States Election Assistance Commission, at 10, *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183 (10th Cir. 2014) (Nos. 14-3062 and 14-3072) (hereinafter, "Fed. *Kobach* Reply Br.") (JA:__).

instance, *see Chevron*, *supra*, the agency is entitled to further deference when it adopts a reasonable interpretation of regulations it has put in force." *Holowecki*, 552 U.S. at 397 (citing *Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984)). Nowhere did DOJ disclose its role in creating the analysis attributed to EAC.[8] In any event, the Tenth Circuit relied on EAC's expert judgment under *Chevron*. *See Kobach*, 772 F.3d at 1190 (applying *Chevron* deference to analyzing EAC's actions and authority, *citing Chevron*, 467 U.S. at 843). In fact, however, the Tenth Circuit unknowingly deferred to DOJ lawyers, not to any EAC expertise.

### b. **DOJ's actions constituted fraud on the Tenth Circuit in *Kobach*.**

Because the DOJ actors were officers of the court, *Brillhart v. Hudson*, 169 Colo. 329, 334 (1969),[9] DOJ's misleading conduct qualifies as fraud on the court.

---

[8]    DOJ made several additional false or misleading claims related to deference, including: (1) "The Commission's rejection of the States' requests was based on *its* construction of the NVRA and *its thorough review* of the administrative record," Fed. *Kobach* Reply Br. at 19 n.6 (emphasis added) (JA:__); and (2) "The *Commission's* reading of *its own* agency guidelines is entitled to deference[.]" *id.* at 28 (citations omitted) (JA:__).

[9]    Although Colorado law may govern the status of counsel in the Tenth Circuit proceedings in Denver, the law in the other relevant jurisdictions is the same: "the attorney is an officer of the court bound by oath to support the administration of the laws, and that fidelity to the court is paramount even to the duty owed to the client." *Booth v. Fletcher*, 101 F.2d 676, 680 n.7 (D.C. Cir. 1938); *In re Dortch*, 860 A.2d 346, 355 (D.C. 2004); *Depew v. Wichita Retail Credit Ass'n*, 141 Kan. 481, 485

Indeed, the facts here are remarkably like the facts in the leading fraud-on-the-court case of *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944). Indeed, given the higher standards expected for government counsel, *Berger v. United States*, 295 U.S. 78, 88 (1935) (government counsel represent "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest … is not that it shall win a case, but that justice shall be done"); *Freeport-McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45, 47 (D.C. Cir. 1992) (applying *Berger* to DOJ lawyers representing federal agencies in civil administrative litigation), DOJ's conduct here was *worse than* that of the attorneys in *Hazel-Atlas*.

First, while the private *Hazel-Atlas* litigation involved "tampering with the administration of justice"—which as "a wrong against the institutions set up to protect and safeguard the public" therefore "involves far more than an injury to a single litigant," *id.* at 246—this case involved *even more*: tampering with the separation of powers on which our government is based and which secures our

---

(1935). For purposes of legal ethics, FED. R. APP. P. 46(c) sets the standard of conduct—namely, the avoidance of conduct unbecoming a lawyer—rather than the ethical rules of any given state. *See In re Snyder*, 472 U.S. 634, 645 & n.6 (1985); *cf. United States v. Williams*, 952 F.2d 418, 422 (D.C. Cir. 1991). The District of Columbia rules apply here because this Court has adopted them. *See* Rules of Disciplinary Enforcement for the United States Court of Appeals for the District of Columbia Circuit, Rule 1(b).

liberty. *Mistretta v. United States*, 488 U.S. 361, 380 (1989) (Founders regarded the "separation of governmental powers into three coordinate Branches [as] essential to the preservation of liberty"). Specifically, the Tenth Circuit relied on EAC's expert judgment under "*Chevron*" deference. *See Kobach*, 772 F.3d at 1190. Philosophically, the *Chevron* doctrine "importantly guards against the Judiciary arrogating to itself policymaking properly left, under the separation of powers, to the Executive." *City of Arlington v. FCC*, 133 S.Ct. 1863, 1886 (2013) (Roberts, C.J., dissenting). At the same time, any deference regime also relies—as a practical matter—on agency expertise. Stephen Breyer, *Judicial Review of Questions of Law and Policy*, 38 ADMIN. L. REV. 363, 368-69 (1986). Neither strand—not deference to the congressional delegation to the Executive and not simple agency expertise—gives DOJ a leg up in litigation, simply because its client is the federal government.

Second, DOJ's fraud is worse by degree. The ghostwriting *Hazel-Atlas* counsel at least had to work through a third-party publisher, which could perform some oversight regarding the article. Here, by contrast, DOJ could simply create and publish the administrative record itself. Similarly, whereas opposing counsel had some suggestion of the *Hazel-Atlas* counsel's involvement in the spurious article and an opportunity for discovery, *id.* at 241, 246 ("even if Hazel did not exercise the highest degree of diligence, Hartford's fraud cannot be condoned for that reason alone" because "[t]his matter does not concern only private parties"), review in the

*Kobach* litigation was on an administrative record—albeit a falsified one—which does not generally include discovery.[10] While EFELDF respectfully submits that DOJ counsel were thus demonstrably more culpable than the *Hazel-Atlas* counsel, this Court need not grade on that scale. This is a pass-fail exercise; like its *Hazel-Atlas* predecessors, DOJ's conduct fails.

### 2. DOJ continued the deception by citing *Kobach* in *Newby I*.

Significantly, DOJ continued the *Kobach* ruse into this Court in the *Newby I* litigation. In their opening brief filed on July 18, 2016, the *Newby I* appellants relied principally on *Kobach*.[11] In EAC's brief filed on July 27, 2016, DOJ knew of the appellants' principal reliance on *Kobach* and itself cited *Kobach* several times,[12] all without disclosing the DOJ's deception in underlying the *Kobach* decision.

### 3. This Court decided *Newby I* without regard to *Kobach*.

Although Kansas cited the sealed materials in *Newby I*, this Court implicitly

---

[10]    *Citizens for Alternatives v. U.S. Dep't of Energy*, 485 F.3d 1091, 1096 (10th Cir. 2007); *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) ("strong showing of bad faith or improper behavior before such inquiry may be made").

[11]    *Compare* Appellants Brief, at v, *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) (No. 16-5196) (JA:__) *with* D.C. Circuit Rule 28(a)(2) (requiring asterisk to mark authorities on which a party principally relies).

[12]    *See* Brief for Federal Appellees, at v, *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) (No. 16-5196) (JA:__).

found the issues for which Kansas cited the sealed materials immaterial, based on EAC's failure to make a threshold "necessity" determination before approving the States' requests. *Newby I*, 838 F.3d at 12. As such, notwithstanding that EAC and the appellants cited *Kobach*, the DOJ deception of the Tenth Circuit was not material here in *Newby I*. EFELDF's arguments about fraud on the Tenth Circuit in *Kobach* do not reflect upon the candor of EAC's counsel here.[13]

### 4. The sealed materials could be unsealed as a sanction for the EAC-DOJ deception.

Although the *Hubbard* factors favor unsealing, *see* Section III, *infra*, this Court need not leave the question to *Hubbard*. As with all equitable relief, a request to seal court records is subject to equitable doctrines "such as waiver, estoppel or unclean hands." *First Am. Corp. v. Al-Nahyan*, 2 F.Supp.2d 58, 64 (D.D.C. 1998). Whatever privileges EAC or DOJ may claim, they can lose that interest—at least as far as any claim to this Court's equitable protection—under the unclean hands doctrine:

> "It is one of the fundamental principles upon which equity jurisprudence is founded, that before a complainant can have a standing in court he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands. He must be frank and fair with the court, nothing about the case under consideration should be guarded, but everything that tends

---

[13] According to PACER, wholly different DOJ counsel—indeed, wholly different DOJ divisions—represented EAC in *Kobach* and in *Newby I* and here.

> to a full and fair determination of the matters in controversy should be placed before the court."

*Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244 (1933) (quoting STORY'S EQUITY JURISPRUDENCE, 14th ed., § 98); *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F.Supp.2d 1, 15 (D.D.C. 2010) ("only those who behave with due regard for equity are properly entitled to it"). Similarly, unsealing could be done as a non-monetary sanction: "If a party's conduct warrants sanctions, courts have discretion to impose *monetary and/or non-monetary sanctions*[.]" *Arpaio v. Robillard*, 459 F.Supp.3d 62, 68 (D.D.C. 2020) (emphasis added).

### D. The district court's seal order is not tailored, much less narrowly tailored.

If the First Amendment applies, its application is fatal to the protective order because the "presumption [of access] may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise*, 478 U.S. at 9 (interior quotation marks omitted); *Robinson*, 935 F.2d at 292 ("the public may be denied access to them only after notice on the public docket has been given of a motion to seal, so that interested parties have an opportunity to be heard"). When a court restricts public access, the "interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise*, 478 U.S. at 9. The district court provided no such notice

and made no such findings.

1. **Even if the claimed privileges apply to deposition *testimony*, Kansas's deposition *questions* are not privileged.**

With or without the First Amendment, the federal government cannot claim privilege over the deposition questions that the opposing parties put to the deponent. While some or all the deponent's deposition testimony might be privileged, at a minimum this Court should reverse the district court and vacate the protective order, allowing instead for EAC publicly to file a redacted copy of the deposition. On remand, EFELDF—or any other party—could challenge the redactions.

2. **For the deposition testimony, *Press-Enterprise* requires reviewing the testimony granularly for redactions.**

Under the First Amendment's narrow tailoring, *Press-Enterprise*, 478 U.S. at 9, it is difficult to imagine how a blanket seal of a deposition could ever be justified. In almost any instance, the lesser relief of redaction would suffice to protect the release of specifically privileged statements. *See*, *e.g.*, *United States v. Cojab*, 996 F.2d 1404, 1409 (2d Cir. 1993) (affirming sealing order that "properly rejected the feasibility of redaction"). If EAC elected to redact some deposition testimony, those redactions could be challenged—by EFELDF or any other party with access to the sealed record—against the narrowness required by *Press-Enterprise* and the terms of the privileges that EAC asserts.

## II. THE DISTRICT COURT VIOLATED THIS COURT'S MANDATE BY DENYING EFELDF ACCESS TO THE SEALED RECORDS.

Parties and courts typically need access to material to make the best arguments for sealing or unsealing the material. *See*, *e.g.*, *Hubbard*, 650 F.2d at 321 ("[u]ntil such an examination is undertaken, the weight of this factor cannot be determined"). Here, the protective order barred parties from disclosing the sealed materials to the public, and the district court denied EFELDF—an intervenor—access. In doing so, the district court violated the "mandate rule" from this Court's reversing the district court's denial of EFELDF's intervention.

### A. This Court's mandate granting EFELDF's intervention to seek to unseal the non-public record included EFELDF's access to the sealed records on remand.

By its terms, the protective order prohibits only public disclosure: "no party or individual may publicly disclose, on this court's docket or otherwise, any documents" filed under seal. Order, at 1 (JA:___). Once this Court granted EFELDF's intervention, EFELDF became *a party*: "When a party intervenes, *it becomes a full participant in the lawsuit* and is treated just as if it were an original party." *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985) (emphasis added). "Under the mandate rule, 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 596-97 (D.C. Cir. 2001) (quoting *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948)); *Am. Council of the Blind v. Mnuchin*, 977 F.3d 1, 5

(D.C. Cir. 2020) (same); *United States v. Kpodi*, 888 F.3d 486, 491 (D.C. Cir. 2018) ("district court commits legal error and therefore abuses its discretion when it fails to abide by … the mandate rule"). Moreover, as explained below, the mandate rule extends not only to the appellate mandate's "letter," but also its "*spirit*." *City of Cleveland v. Fed. Power Comm'n*, 561 F.2d 344, 346 (D.C. Cir. 1977) (quoting *Yablonski v. United Mine Workers*, 454 F.2d 1036, 1038 (D.C. Cir. 1971)) (emphasis added). The district court violated the spirit of this Court's mandate.[14]

"Failure to comply with a mandate is a jurisdictional error." *United States v. White*, 751 F.Supp.2d 173, 175 (D.D.C. 2010). This Court "is without power to do anything which is contrary to either the *letter or spirit* of the mandate[.]" *City of Cleveland*, 561 F.2d at 346 (quoting *Yablonski*, 454 F.2d at 1038) (emphasis added). The "letter" of a mandate provides "instant enlightenment" when the appellate court expressly addressed the issue in question. *Mid-Tex Elec. Coop., Inc. v. FERC*, 822 F.2d 1123, 1130 (D.C. Cir. 1987). The "spirit" of a mandate "may be derived only

---

[14]    In district court, EAC cited *United States v. Brit. Am. Tobacco Australia Servs., Ltd.*, 437 F.3d 1235, 1237 (D.C. Cir. 2006), for the proposition that EFELDF was a not a *full* party: "Under the terms of the intervention [for the limited purpose of asserting and, if necessary, litigating privileges in certain documents disclosed in the litigation] . . . therefore, BATAS is not a full party to the suit." *Id.* The "fullness" of EFELDF's party status is irrelevant. The protective order prohibits only *public disclosure*. Order, at 1 (JA:__). It is indisputable that intervenors are a *type* of "party," rather than the mere "public." *Local No. 93, Int'l Ass'n of Firefighters, etc. v. Cleveland*, 478 U.S. 501, 528-29 (1986).

by implication from the prior [appellate] opinion" as an "interim mandate." *Id.* The mandate thus can extend to "matters included *or includable* in [the] prior appeal." *Seese v. Volkswagenwerk, A.G.*, 679 F.2d 336, 337 (3d Cir. 1982). The Court of Appeals did not directly rule upon EFELDF's access to the sealed materials, but it did not need to do so. The issue on appeal was whether EFELDF should be allowed to intervene (*i.e.*, to become a type of "party," however qualified) to move to unseal the sealed record. Once the Court of Appeals determined that issue and remanded to allow a motion to unseal, EFELDF's access to the sealed materials was implicit in the protective order itself, which forbade only *public disclosure*. Order, at 1 (JA:__). At that point, the Clerk or one of the other parties could have provided EFELDF access to the sealed materials, but for this Court's Minute Order dated May 6, 2022, denying EFELDF access.

**B.   EFELDF's acknowledgment that it "*can* brief" the unsealing issue without access does not estop EFELDF from arguing that the district court erred in denying EFELDF access.**

The district court took the position that "EFELDF cannot now rescue itself from its previous position in the [R:184] Joint Status Report that 'a limited–purpose intervenor can brief the unsealing of documents the intervenor has not seen,'" Minute Order (Jan. 18, 2023) (quoting Joint Status Report, 2 (Apr. 11, 2022)) (emphasis omitted in Minute Order) (JA:__), but the district court erred in two ways.

First, EFELDF also stated that "EFELDF's briefing of these issues would be

more illuminating if EFELDF could contest Defendants' claims of good faith after EFELDF has reviewed what Defendants seek to keep from public disclosure." Joint Status Report, 2 (Apr. 11, 2022) (JA:__). Indeed, EFELDF *did* "brief the unsealing of documents [EFELDF] has not seen." *Id.* On remand, this Court should expressly clarify that EFELDF—as a party, of whatever sort—EFELDF is not the mere public to whom the protective order prohibits distribution.

Second, a "district court is *without jurisdiction* to alter the mandate of this court on the basis of matters *included or includable* in defendants' prior appeal." *Seese*, 679 F.2d at 337 (emphasis added). EFELDF included a request for access to the sealed material in its appeal,[15] but this Court did not reach the issue. Because elevating EFELDF to party status as an intervenor sufficed to guarantee EFELDF access under the protective order, the issue of EFELDF's access was both "included or includable" in *Newby II* and covered by the "spirit" of this Court's mandate. The district court thus lacked jurisdiction to deny EFELDF access.

### C.    EFELDF meets the tests under Rules 59(e) and 60(b)(1) to correct the district court's error in denying access to the sealed record.

EFELDF sought reconsideration under Rule 60(b)(1) and alteration of the

---

[15]    "[T]his Court … could … reverse the denial of EFELDF's intervention, which would allow EFELDF access to the sealed materials under the protective order, at which point EFELDF could move to unseal the relevant portions of the sealed materials under *Hubbard*." EFELDF Reply, at 17, *League of Women Voters of the U.S. v. Newby*, 963 F.3d 130 (D.C. Cir. 2020) (No. 19-7027) (JA:__).

judgment under Rule 59(e). *See* Fed. R. Civ. P. 59(e), 60(b)(1). Given the change in the law from the district court's Minute Order dated May 6, 2022, to deny EFELDF access, EFELDF satisfies the criteria of Rule 59(e). *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 671 (D.C. Cir. 2004) (requiring "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice") (internal quotations omitted). Similarly, even without Rule 59(e), Rule 60(b)(1) provides for reconsideration for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), which "covers *all* mistakes of law made by a judge." *Kemp*, 142 S.Ct. at 1862 (2022) (emphasis added).[16] As indicated in Section II.B, *supra*, denying EFELDF access was clear legal error because the denial violated the mandate rule.

## III.    THE *HUBBARD* FACTORS DO NOT JUSTIFY KEEPING THE COURT RECORDS UNDER SEAL.

The six *Hubbard* factors warrant unsealing of most, if not all, of the sealed deposition testimony. Because EFELDF was not allowed access to the sealed record, EFELDF cannot guarantee that the sealed deposition testimony does not contain at least some confidential information that warrants limited redaction. For example, for all that EFELDF knows, the deponent might have discussed health issues that factored into the basis for EAC inaction with respect to the States' administrative

---

[16]     The Supreme Court decided *Kemp* on June 13, 2022. *Id.* at 1858.

petitions. *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 980-81 (D.C. Cir. 2016) ("public has no need for access to documents that describe [a party's] disability"). Such hypothetical personal information could be redacted, without sealing all the deposition testimony.

### A.    The public needs access to the documents.

The first *Hubbard* factor goes to the rationale for needing public access to the sealed documents. *See Hubbard*, 650 F.2d at 317-18. The district court found this factor to "tip[] only modestly in favor of unsealing" because the merits decision did not refer to the sealed material and the sealed materials were not in the administrative record, but the public had access to other parts of the merits proceedings. Slip Op. 3 (internal quotations omitted) (JA:__). The district court's analysis of the first factor did not address whether the public needs access to reveal the extent to which DOJ misled the Tenth Circuit in *Kobach* or EAC misrepresented *Kobach* to this Court by citing *Kobach* without disclosing the deception of the Tenth Circuit.[17] The public requires access to the record here for two reasons.

First, with respect only to the underlying litigation here, the first factor favors disclosure, albeit "only modestly" if the sealed materials are immaterial. *Hubbard*,

---

[17]    Under the fourth factor, the district court—in apparent reference to EFELDF's arguments about *Kobach*—described the argument as "speculative claims of fraud irrelevant to the Court's resolution of the merits of this case." Slip Op. 4 (JA:__).

650 F.2d at 317-18; *but see* Section III.F, *infra* (discussing relevance and materiality of sealed materials). If the sealed deposition testimony is more relevant and material here, the "modest" tip from the first factor would increase. *See* Section III.F, *infra* (discussing sixth *Hubbard* factor).

Second, given DOJ's cavalier manipulation in *Kobach* of the deference that courts owe to expert agencies and EAC's reliance on that manipulation here, this case counsels for revisiting the separation-of-powers implications of the generous judicial deference to independent agencies compelled to litigate with DOJ. *See* 28 U.S.C. § 516.[18] Quite simply, if DOJ lawyers are free to misrepresent their clients' positions, there is no sound basis for judicial deference to agencies' litigation positions. EFELDF respectfully submits that the district court erred by confining the public-interest review under the first *Hubbard* factor *to this case*, apart from the "general public interest" in the sealed record:

> [T]his balancing test should not be an abstract inquiry, but
> should focus on the specific nature of the governmental

---

[18] As indicated in Section I.C.3 & n.13, *supra*, the misconduct in *Kobach* did not involve either EAC's current DOJ counsel in this Court or EAC staff. Nonetheless, actions by counsel can bind clients, *In re Papst Licensing GmbH & Co. KG Litig.*, 791 F.Supp.2d 175, 180-81 (D.D.C. 2011) (citing *Oscanyan v. Arms Co.*, 103 U.S. 261, 263 (1880)); *Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 423 n.2 (D.C. 2000), and clients can ratify their counsel's prior actions after the fact. *Mott v. Kerns*, 825 F.2d 411 (6th Cir. 1987) (collecting cases); *In re Vitamins Antitrust Litig.*, 398 F.Supp.2d 209, 228 (D.D.C. 2005) (noting client ratification); *In re Shieh*, 738 A.2d 814, 831 (D.C. 1999) (same); *McDevitt v. Wells Fargo Bank, N.A.*, 946 F.Supp.2d 160, 171 (D.D.C. 2013).

> and public interests as they relate to the document itself,
> as well as the general public interest in the openness of
> governmental processes.

*Washington Legal Found. v. United States Sentencing Comm'n*, 17 F.3d 1446, 1452

(D.C. Cir. 1994) ("*WLF*"); *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 996-97 (D.C.

Cir. 2021) (analogizing *WLF* and first *Hubbard* factor regarding significant public

interest); *cf.* 5 U.S.C. § 552(a)(4)(A)(iii) (recognizing "public interest" in

documents "likely to contribute significantly to public understanding of the

operations or activities of the government"); *Perioperative Servs. & Logistics, LLC

v. VA*, 57 F.4th 1061, 1068 (D.C. Cir. 2023) (same).[19] If DOJ is relying on fraud on

the court to win cases that narrow the States' right to set voter qualifications, *see*

Section I.C, *supra*, the public needs to know and courts should not be complicit in

hiding DOJ's conduct.

**B.     The public had prior access to some of the sealed information.**

The second *Hubbard* factor is the extent of prior public access. *See Hubbard*,

650 F.2d at 318. As EFELDF noted below in seeking reconsideration of the district

court's denial of access to the sealed materials, EFELDF does not know what the

sealed deposition testimony includes, so the full extent of prior disclosure is

unknown to EFELDF. *See* Section II, *supra*. The district court found the second

---

[19]     Freedom of Information Act ("FOIA") cases can present different questions
than *Hubbard* cases, *Perioperative Servs.*, 57 F.4th at 1066, but the public interest
is at least as broad under the First Amendment and common law as under FOIA.

*Hubbard* factor neutral because the sealed material was not previously disclosed. Slip Op. 3 (JA:__). EFELDF respectfully submits that the district court misconstrued the focus of the second *Hubbard* factor as asking whether *the sealed deposition* had ever been publicly accessible. The second *Hubbard* factor focuses instead on whether *the information in the sealed deposition testimony* was publicly accessible. *CNN, Inc. v. FBI*, 984 F.3d 114, 119 (D.C. Cir. 2021); *CBS, Inc. v. United States District Court*, 765 F.2d 823, 825-26 (9th Cir. 1985) (information that can be surmised from public record inappropriate to seal); *In re The Herald Co.*, 734 F.2d 93, 101 (2d Cir. 1984) ("sufficient public exposure" of "the information sought to be kept confidential" can "preclude a closure order"). If the second *Hubbard* factor focused on the sealed record itself, the factor would rarely be met.

Once the public already has had access to information, "it would take the most extraordinary circumstances to justify restrictions" of further public access. *United States v. Thompson*, 17 Media L. Rep. 1004, 1989 U.S. App. LEXIS 19909, at *3 (D.C. Cir. Oct. 13, 1989) (quoting *United States v. Myers*, 635 F.2d 945, 952 (2d Cir. 1980)); *In re Application for Access to Video Exhibits*, 575 F.Supp.3d 101, 110 (D.D.C. 2021) (when a summary is already available publicly, the public has a right of access to the original, citing *Myers*, 635 F.2d at 952);[20] *United States v. James*,

---

[20]     *Myers* is also cited as *In re Nat'l Broad. Co.*, 635 F.2d 945, 952 (2d Cir. 1980).

2021 U.S. Dist. LEXIS 235358, at *5-6 (D.D.C. Aug. 23, 2021) ("limited prior public access tips in favor of full release") (No. 1:21-cr-0028-12-APM). At least some sealed deposition testimony confirms the publicly available Newby Declaration on the issue of whether DOJ drafted the EAC's petition denials at issue in *Kobach*. *See* Kansas Br. at 8, *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) (No. 16-5196) (JA:__). By confirming the public Newby Declaration on this issue of significant public concern, the sealed deposition testimony includes *information* that was previously available.

The second *Hubbard* factor favors unsealing of at least *some* deposition testimony. To determine which portions of the sealed deposition testimony should be redacted, EFELDF would need to review the sealed deposition testimony.

### C. The lack of third-party objectors favors disclosure.

The third *Hubbard* factor goes to whether anyone has objected to disclosing the record, *see Hubbard*, 650 F.2d at 319, and applies "broader protection" when *third-party* property or privacy rights are at issue.

> [W]here a third party's property and privacy rights are at issue the need for minimizing intrusion is especially great and the public interest in access to materials which have never been judicially determined to be relevant to the crimes charged is especially small.

*Hubbard*, 650 F.2d at 319. The district court found this factor weighs against unsealing based on EAC's objections. Slip Op. 3 (citing *EEOC v. Nat'l Children's*

*Ctr., Inc.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996)) (JA:___).

Critically, it is not clear *who* objects, EAC or DOJ. While DOJ represents EAC in litigation, 28 U.S.C. § 516, that does not convert every DOJ statement into an EAC statement: "Any action which the Commission is authorized to carry out under this chapter may be carried out only with the approval of at least three of its members." 52 U.S.C. § 20928. Further, the other parties—including Kansas—have not taken a position on the seal, but their position would be relevant:

> The fact that the EEOC, a party to the lawsuit and a public agency, objected to sealing the record is not only relevant, but strengthens the already strong case for access. *See Federal Trade Comm'n v. Standard Fin. Management Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party.").

*Nat'l Children's Ctr.*, 98 F.3d at 1409. If Kansas opposed the seal, that similarly would "strengthen[] the already strong case for access." *Id.*

Even assuming *arguendo* that EAC itself objects and that Kansas does not take a position, the third *Hubbard* factor provides only weak support for sealing. Although a party's objection can weigh in favor of a seal under the second *Hubbard* factor, that weight is less than when third-parties object. *Hubbard*, 650 F.2d at 319-20. Moreover, that one factor can be outweighed when "there are several factors in favor of not sealing" under "the strong presumption in favor of public access." *Nat'l Children's Ctr.*, 98 F.3d at 1410. At best, this factor weakly supports the seal.

**D.    The property and privacy interests that EAC and DOJ assert are weak to non-existent.**

The fourth *Hubbard* factor is the strength of the asserted interest in keeping documents sealed. *See Hubbard*, 650 F.2d at 320. The district "court has refined the interpretation of this factor to require consideration of the effect that unsealing the documents would have on the party's property and privacy interests generally." *United States v. Thomas*, 840 F.Supp.2d 1, 5 (D.D.C. 2011) (interior quotation marks omitted). The district court found the EAC and DOJ claims under the attorney-client privilege, attorney work-product doctrine, and deliberative-process privilege cognizable under this *Hubbard* factor but declined to resolve the claims because the litigation had concluded without the need to resolve the claims. Slip Op. 3-4 (JA:__). The district court then found "assertions of privilege weigh against unsealing," even without analyzing the assertions. *Id.* at 4 (JA:__). The following three subsections show that DOJ's claims of privilege are insubstantial.

**1.    The attorney-client privilege does not apply.**

The attorney-client privilege is inapposite for three separate reasons: (1) the pertinent EAC-DOJ relationship was not an attorney-client relationship, (2) but even if it were, the crime-fraud exception could vitiate the privilege, and (3) DOJ has not met its burden of proving that the privilege applies.

The attorney-client privilege applies to "confidential communications … between clients and their attorneys when the communications are for the purpose of

securing legal advice or services." *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984); *Jones v. United States*, 828 A.2d 169, 174 (D.C. 2003). It flows from common law and—as such—should be strictly construed. *Trammel v. United States*, 445 U.S. 40, 47 (1980); *Jones*, 828 A.2d at 174-75 ("courts construe the attorney-client privilege narrowly"); *In re Lindsey*, 148 F.3d 1100, 1108 (D.C. Cir. 1998) ("strictly confined within the narrowest possible limits") (*Lindsey I*). "The privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (interior quotations omitted). *Jones* identified two formulations of the privilege in the District of Columbia. First, the privilege applies:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Jones*, 828 A.2d at 175. The second formulation requires the *client* (here, EAC) to assert the privilege. *Jones*, 828 A.2d at 175 n.3. The burden of proving that the attorney-client privilege shields a particular communication from disclosure rests with the party asserting the privilege. *Lindsey I*, 148 F.3d at 1106. DOJ cannot make that showing.

### a.    There is no relevant attorney-client relationship.

The first and most basic aspect of the attorney-client privilege is the existence of an *attorney-client relationship*: "the agency must first show that the materials reflect a communication between a lawyer and client." *Conservation Force v. Jewell*, 66 F.Supp.3d 46, 62 (D.D.C. 2014). For several inter-related reasons, the Miller-DOJ interactions did not establish an attorney-client relationship.

In the agency-as-client context, the attorney-client privilege applies if the agency proves that the attorney was "acting as a lawyer and the communication was made for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (internal quotations and citation omitted) (*Lindsey II*). But, while "[t]he attorney-client privilege protects confidential communications made between clients and their attorneys," *Lindsey I*, 148 F.3d at 1103, not every interaction with a lawyer qualifies: "Where one consults an attorney not as a lawyer but as a friend or as a business adviser or banker, or negotiator … the consultation is not professional nor the statement privileged." *Id.* at 1106 (citations omitted). Seeking "advice on political, strategic, or policy issues" "valuable as it may [be]," would not be shielded from disclosure by the attorney-client privilege." *Id.* This Circuit requires a "clear showing" that counsel is acting in a legal capacity before allowing a party to withhold documents under the attorney-client privilege. *Sealed*

*Case*, 737 F.2d at 99; *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997) (government bears the burden of proving that communications from "dual hat advisers" occurred in conjunction with the privileged advice). Not all government lawyering triggers the privilege.

Specifically, a government attorney's "advice on political, strategic, or policy issues [is] not … shielded from disclosure by the attorney-client privilege." *Lindsey I*, 148 F.3d at 1106. For example, "when the [agency] counsel rendering the legal opinion in effect is making law," there is no attorney-client privilege. *Tax Analysts v. I.R.S.*, 117 F.3d 607, 619 (D.C. Cir. 1997); *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) (no privilege applies when counsel "had become an integral part of the adjudicative decisionmaking process"). DOJ's work to devise EAC policy on the States' voter-registration requirements was not practicing law; it was *making* law. That is not within the attorney-client privilege.

This Circuit has appropriately rejected the legal "conceit" that a client can hide improper actions merely by running them through the law department. *Lindsey II*, 158 F.3d at 1278. Admission to the bar licenses a lawyer to practice law; it does not license the lawyer to obfuscate or cover up. Significantly, there is no identity of interest between an independent agency like EAC[21] and either a current

---

[21]     "Independent agencies are those agencies whose heads cannot be removed by the President except for cause and that therefore typically operate with some

41

administration's political DOJ appointees or even the career DOJ staff. *Consumer Energy Council v. Fed'l Energy Regulatory Comm'n*, 673 F.2d 425, 472 (D.C. Cir. 1982) ("the President, as representative of the Executive, does not have a claim to control the decisionmaking of independent agencies"); *Sierra Club v. Costle*, 657 F.2d 298, 405-06 (D.C. Cir. 1981) (distinguishing an executive-branch agency from an "independent agency"); *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 184 n.1 (D.C. Cir. 2013) (distinguishing between FEC and DOJ counsel). Simply put, DOJ is separate from independent agencies, and Congress did not delegate authority to DOJ. *Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 354 (D.C. Cir. 1998). DOJ cannot simply assume or usurp EAC's powers.

### b. The crime-fraud exception may nullify whatever privileges exist.

Even if there were a relevant attorney-client relationship for the relevant records, the privilege would not protect crime, fraud, or other misconduct: "Attorney-client communications are not privileged if they are made in furtherance of a crime, fraud, or other misconduct." *In re Grand Jury*, 475 F.3d 1299, 1305 (D.C. Cir. 2007) (internal quotations omitted). Here, DOJ commandeered EAC after *ITCA* to create a denial of the States' post-*ITCA* requests, then defended the purported

---

(undefined) degree of substantive autonomy from the President in a kind of extra-constitutional Fourth Branch." *SEC v. FLRA*, 568 F.3d 990, 997 (D.C. Cir. 2009) (Kavanaugh, J., concurring).

EAC action—which was actually DOJ action—as the work of a non-partisan, independent and expert election-law agency. Significantly, the Tenth Circuit was deceived by DOJ's fraud, as evidenced by its decision deferring to EAC's expertise in upholding the purported EAC action.

The *ITCA* decision itself proposed the renewed requests to EAC, with judicial review to follow, making DOJ's entire post-*ITCA* charade a premediated enterprise. As explained below, the situation here falls within the "crime-fraud" exception to the attorney-client privilege for fraud generally and for fraud on the court. Finally, even without finding crime or fraud, the "crime-fraud" exception also includes "misconduct," which is readily present for all the reasons argued below.[22]

The crime-fraud exception's common-law half is both familiar and broad: "The law does not define fraud; it needs no definition; it is as old as falsehood and as versable as human ingenuity." *United States v. Reid*, 533 F.2d 1255, 1264 (D.C. Cir. 1976) (internal quotations omitted).[23] In addition to qualifying as general,

---

[22] The party seeking to overcome a privilege bears the burden of proof, which is met by establishing a *prima facie* case of crime or fraud, meaning probable cause thereof. *In re Grand Jury*, 475 F.3d at 1305-06; *In re Sealed Case*, 754 F.2d 395, 399 & n.3 (D.C. Cir. 1985); *United States v. Zolin*, 491 U.S. 554, 563 n.7 (1989). EFELDF need not prove crime or fraud on the merits.

[23] In the District of Columbia, common-law fraud consists of "(1) a false representation, (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) upon which action is taken in reliance." *Washington Inv. Ptnrs. of Del., LLC v. Securities House*, 28 A.3d 566, 580 (D.C.

common-law fraud, DOJ's actions also qualify as a more-specific species: fraud on the court: "Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court." *Synanon Found., Inc. v. Bernstein*, 503 A.2d 1254, 1263 (D.C. 1986) (citation and interior quotations omitted); *Bowie v. Maddox*, 677 F.Supp.2d 276, 284 n.5 (D.D.C. 2010); *In re Marriage of Gance*, 36 P.3d 114, 118 (Colo. App. 2001); *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995).[24] Both types of fraud occurred in *Kobach*.[25]

Regarding fraud, for DOJ to hold out its analysis as EAC's expert analysis knowingly and falsely misrepresented the facts. Even "half-truths"—*i.e.*, "representations that state the truth only so far as it goes, while omitting critical qualifying information"—"can be actionable misrepresentations." *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 188 (2016). Thus, the first three criteria—falsity, materiality, and scienter—are met. In addition, because the

---

2011); *accord United States v. Kiefer*, 228 F.2d 448, 449 (D.C. Cir. 1955) (listing same five elements); *accord Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544, 558 (Colo. 1988) ("[f]raud consists of a false representation of a material existing fact, made with knowledge of or utter disregard for its falsity, with intent to induce another to rely upon the representation and to take detrimental action thereon").

[24] Because the District of Columbia and Colorado courts, the Tenth Circuit, and this Circuit have the same law, this Court need not resolve which jurisdiction's law to apply.

[25] In the end, however, DOJ's *Kobach* misconduct was not material in *Newby I*. *See* Section I.C.3, *supra*.

Tenth Circuit took the bait and made it part of the *Kobach* decision, the final two criteria—materiality and reliance—also are met here. In short, DOJ and Miller acted fraudulently. *See* Section I.C.1.b, *supra*.

<blockquote>

**c.**     **DOJ did not establish the existence of attorney-client confidentiality.**
</blockquote>

For good or ill, Congress delegated DOJ the authority to "supervise all litigation to which the United States, an agency, or officer thereof is a party," 28 U.S.C. § 516, including independent non-partisan agencies like EAC. While it is certainly possible—under different circumstances—that DOJ lawyers could have been working with EAC staff in the post-*ITCA* remand—and in *Kobach*—to pursue *EAC's* nonpartisan policies and mission, it is also certainly possible that a partisan DOJ was pursuing *DOJ's* partisan objectives. If so, that partisan agenda could have been coordinated with third parties beyond the individual lawyers professionally representing EAC (*e.g.*, with political actors within DOJ, the Executive Office of the President, and private-sector non-governmental allies). Because the attorney-client privilege is waived when confidences are disclosed, *Mead Data Central, Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 253 (D.C. Cir. 1977); *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980), DOJ cannot now claim privilege if the purportedly privileged materials were disclosed outside the purported attorney-client relationship with EAC. Significantly, "the agency must carry the burden of demonstrating the confidentiality of the lawyer-client communication, both at the

time of the communication and maintained since." *Conservation Force*, 66

F.Supp.3d at 62 (interior quotations omitted); *accord Coastal States Gas Corp. v.*

*Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980). To assert privilege, DOJ must

establish that the records were kept confidential.

## 2. The attorney work-product doctrine does not apply.

The work-product privilege does not shield DOJ's work for EAC from

disclosure. Under *Hickman v. Taylor*, 329 U.S. 495 (1947), the work-product

doctrine "identifies a complex of interrelated interests … to protect," which "range

from clients' interests in obtaining good legal advice, undistorted by mechanisms to

avoid discovery, to the interests of attorneys in their own intellectual product." *In re*

*Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982). The work-product "doctrine

protects only work performed in anticipation of litigation or for trial." *FTC v.*

*Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015). Whatever

the differences with the attorney-client privilege, the work-product doctrine overlaps

with the attorney-client privilege in two important ways for creating and vitiating

the privilege: (1) "[t]he work-product doctrine relies, in the first instance, on the

existence of an attorney-client relationship," *Texas v. United States*, 279 F.R.D. 24,

29 (D.D.C. 2012), *vacated on other grounds*, 570 U.S. 928 (2013); *Lazaridis v. U.S.*

*Dep't of State*, 934 F.Supp.2d 21, 33 (D.D.C. 2013). For at least three reasons, the

work-product doctrine does not apply.

First, work on the post-*ITCA* remand petition denials was not prepared in anticipation of litigation. It was an exercise of an independent agency's policy.

Second, without a relevant attorney-client relationship for the DOJ-Miller legerdemain, *see* Section III.D.1.a, *supra*, there are no work-product protections for DOJ's work.

Third, the work-product doctrine's protection is vitiated by showing that the client used the attorney to further a crime or fraud, including misconduct. *In re Sealed Case*, 107 F.3d 46, 51 (D.C. Cir. 1997); *Sealed Case*, 676 F.2d at 812 (work-product privilege's crime-fraud exception encompasses other "misconduct fundamentally inconsistent with the basic premises of the adversary system" and is broader than purely criminal or fraudulent conduct). Any such privilege is vitiated.

### 3. The deliberative-process privilege does not apply.

The deliberative-process privilege does not shield the record here. That privilege applies to documents that implicate the "decisionmaking processes of government agencies," including those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotations omitted). The privilege exists to "to ensure open communication between subordinates and superiors, prevent premature disclosure of policies before final adoption, and to avoid public confusion

if grounds for policies that were not part of the final adopted agency policy happened to be exposed to the public," *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F.Supp.2d 1, 10 (D.D.C. 2004), and it protects only "documents that are *both* predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (emphasis added). Documents are "predecisional [when] generated before the adoption of an agency policy" and "deliberative [when they] reflect[] the give-and-take of the consultative process." *Id.* (internal quotations omitted). That did not happen if DOJ wrote the policy for EAC.

This privilege does not apply here for four reasons: (1) DOJ's malfeasance with regard to secretly and dishonestly using the independent and bipartisan EAC for partisan purposes vitiates DOJ's ability to assert the privilege; *Sealed Case*, 121 F.3d at 738; *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992); (2) the privilege is merely "a qualified privilege and can be overcome by a sufficient showing of need," "made flexibly on a case-by-case, ad hoc basis," *Sealed Case*, 121 F.3d at 737; (3) the privilege does not apply when purportedly privileged materials go to the administrative record[26] on which a court must base APA review, 5 U.S.C. § 706; *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998);

---

[26]    EFELDF refers here to the administrative record in *Kobach*, not to the administrative record in *Newby I*.

and (4) if DOJ relies on documents having been marked "DRAFT" or other signs of pre-decisional status, such marking cannot alone establish predecisional and deliberative status, *Wilderness Soc'y*, 344 F.Supp.2d at 14; *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982); *Coastal States*, 617 F.2d at 866.

**E.    The risk of prejudice is overstated and unsupported.**

The fifth *Hubbard* factor is the possibility of prejudicing parties who oppose disclosure. *See Hubbard*, 650 F.2d at 320-21. The district court credited DOJ's fear that allowing a single government employee to waive the government's privilege would chill future intra-government communication, especially communications between DOJ and its federal clients.[27] Slip Op. 4 (citing *United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F.Supp.3d 71, 85 (D.D.C. 2020)) (JA:__). The district court erred in crediting DOJ's generalized concern to the unique facts of *this case*. Disclosure tied to DOJ misconduct in *Kobach* would not apply to all DOJ conduct in other cases.

There is no protected right to continue or hide an ongoing fraud, so disclosure does not *prejudice* anyone in a cognizable way. Justice Brandeis' maxim applies:

---

[27]    Of course, one would need to review the deposition transcript to determine if and where the testimony would waive privileges: "The likelihood of prejudice will in turn depend on a number of factors, including, most importantly, the nature of the materials disclosed. Until such an examination is undertaken, the weight of this factor cannot be determined." *Id.* at 321.

"Sunlight is … the best of disinfectants." *Buckley v. Valeo*, 424 U.S. 1, 67 (1976) (interior quotations omitted). While DOJ does not suffer cognizable prejudice from disclosure, the public and even this Court would suffer prejudice if the full basis for proof-of-citizenship rules and for reviewing EAC's actions were not fully disclosed: "Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification." *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006). Simply put, there is no right to conceal misconduct, so disclosure would not cognizably prejudice anyone.

*Bank Julius Baer*—relied on by the district court—cuts precisely the opposite way. There, the district court cited at least six other district court decisions, all for the uncontroversial proposition that the fifth *Hubbard* factor requires parties to demonstrate how disclosure will prejudice future litigation. *Bank Julius Baer*, 520 F.Supp.3d at 85; *cf. Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997) (declining to address cursory argument). Unless DOJ reserves the right to commit fraud on the court in all its cases, DOJ cannot meet that test here without rebutting EFELDF's arguments about DOJ's fraud on the Tenth Circuit in *Kobach*. Without DOJ's meeting that test, the fifth *Hubbard* factor counsels for unsealing.

### F.    The purpose for which Kansas introduced the sealed records is neutral.

The sixth *Hubbard* factor is the purpose for which a given document was

introduced into the litigation and its relevance to the proceedings, including whether the court relied on the document. *See Hubbard*, 650 F.2d at 321-22. The district court found this factor to support the seal because the sealed materials (a) were not found relevant or relied upon in deciding the underlying litigation, (b) were discovery outside the administrative record, and (c) were disclaimed by the parties. Slip Op. 4. (citing *Bank Julius Baer*, 520 F.Supp.3d at 85) (JA:__). As with the fifth *Hubbard* factor, *Bank Julius Baer* cuts the opposite way.

With the sixth *Hubbard* factor, "there is a strong presumption of public access to documents that a litigant submits with the *intention* that the court will rely on them." *Bank Julius Baer*, 520 F.Supp.3d at 85 (emphasis added); *Hubbard*, 650 F.2d at 321 (finding sixth factor diminished where the information in question is introduced for a litigation-related purpose). Under the sixth *Hubbard* factor, the issue is not whether Kansas's theory of the case was pretermitted by a threshold issue, but rather whether Kansas introduced the evidence with the intent that the court rely on it.

By way of background, the sealed documents had several litigation-related purposes:

- The plaintiffs and DOJ relied on *Kobach* to argue for following EAC precedent in the underlying litigation here. If the sealed documents— consistent with the Newby Declaration—undercut that narrative by revealing

that EAC and DOJ secured *Kobach* by committing a *Hazel-Atlas* fraud on the court, that was relevant.

- Similarly, the sealed materials were relevant to the plaintiffs' arguments based on past EAC precedent and actions: "For the agency to reverse its position in the face of a precedent it has not persuasively distinguished is quintessentially arbitrary and capricious." *La. Pub. Serv. Comm'n v. Fed. Energy Regulatory Comm'n*, 184 F.3d 892, 897 (D.C. Cir. 1999); *Pacific Northwest Newspaper Guild v. NLRB*, 877 F.2d 998, 1003 (D.C. Cir. 1989) (agencies must follow a principled "legal theory" and avoid "ad hocery."). Because "an agency changing its course must supply a reasoned analysis," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983), evidence that undermines EAC precedent goes to the merits.

- Given their ties to the procedural need for a reasoned analysis, the records in question also go to plaintiffs' procedural standing to bring the underlying litigation, which—in turn—goes to the "concern about the proper—and properly limited—role of the courts in a democratic society." *Bennett v. Spear,* 520 U.S. 154, 162 (1997) (interior quotations and citations omitted).

In sum, the sealed materials were relevant and submitted to influence the court, which remains true notwithstanding that this Court decided the case on the threshold issue that EAC first needed to make a necessity determination prior to approving the

States' requests. *Newby I*, 838 F.3d at 12.

Because Kansas relied on at least some of the sealed deposition testimony in its briefing of the preliminary injunction, the strong presumption against sealing should apply, notwithstanding that this Court ruled on the threshold issue of the lack of a necessity determination:

> The court notes the seeming bright-line distinction drawn with respect to this factor: if the documents were obtained through discovery, for example, they are afforded a stronger presumption of privacy; however, if the documents are entered as evidence during a trial, there is a strong presumption against sealing because a trial is a public event.

*Thomas*, 840 F.Supp.2d at 5 (interior quotation marks, citations, and alterations omitted); *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("documents used by the parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons"); *Hubbard*, 650 F.2d at 321. The sixth *Hubbard* factor thus counsels for disclosure.

## RELIEF REQUESTED

This Court should reverse the district court's denial of EFELDF's motion to unseal and either vacate the protective order (JA:__) *in toto* or remand with the following instructions:

- Upon the issuance of this Court's mandate, the Clerk of the District Court or a party may provide the sealed materials to EFELDF's counsel;

- Within thirty (30) days of this Court's mandate, EAC shall file a public version of the sealed materials, which may contain any good-faith redactions consistent with this Court's decision; and

- Pursuant to the district court's Local Civil Rule 7 and its procedural criteria for motions, EFLEDF or any other party may move to challenge any redactions that EAC makes.

## **<u>CONCLUSION</u>**

This Court should reverse the denial of EFLDF's motion to unseal the record.

Dated: August 21, 2023                    Respectfully submitted,

/s/ Lawrence J. Joseph
Lawrence J. Joseph, D.C. Bar #464777

1250 Connecticut Ave, NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

1.     The foregoing document complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because the motion contains 11,769 words, excluding the parts of the document exempted from counting.

2.     The foregoing document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Times New Roman 14-point font.

Dated: August 21, 2023       Respectfully submitted,

/s/ Lawrence J. Joseph
_____
Lawrence J. Joseph, D.C. Bar #464777

1250 Connecticut Ave, NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, I electronically filed the foregoing document with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, which will serve the parties' counsel of record.

/s/ Lawrence J. Joseph
Lawrence J. Joseph