# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

League of Women Voters of the United States, et al.,

Plaintiffs-Appellees,

v.

Steven Frid, in his capacity as Executive Director of the United States Election Assistance Commission, et al.,

Defendants-Appellees.

Education Eagle Forum Education & Legal Defense Fund;

Intervenor-Appellant.

———————————————

On Appeal from the United States District Court
for the District of Columbia

———————————————

## FINAL BRIEF FOR DEFENDANTS-APPELLEES

———————————————

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

DANIEL TENNY
CAROLINE D. LOPEZ
*Attorneys, Appellate Staff
Civil Division, Room 7535
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-4825*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.    Parties and Amici

The Eagle Forum Education & Legal Defense Fund, which intervened below for the purpose of unsealing the record, is appealing the denial of that motion, and is thus appellant in this Court.

The defendants in the district court, who are appellees in this Court, are the U.S. Election Assistance Commission and Steven Frid in his official capacity as the Executive Director of the Election Assistance Commission.

Plaintiffs in the district court, who are appellees in this Court, are the League of Women Voters of the United States; League of Women Voters of Alabama; League of Women Voters of Georgia; League of Women Voters of Kansas; Georgia State Conference of the NAACP; Georgia Coalition for the People's Agenda; Marvin Brown; and Joann Brown. No brief was filed in the district court on behalf of any of the plaintiffs related to the motion filed by Eagle Forum Education & Legal Defense Fund, which is the subject of this appeal. Project Vote was a plaintiff but is no longer a party to this litigation.

The defendant-intervenors in the district court, who are appellees in this Court, are Scott Schwab, Secretary of State of Kansas; and the Public Interest

Legal Foundation. No briefs were filed in the district court on behalf of any of the defendant-intervenors related to the motion filed by Eagle Forum Education & Legal Defense Fund, which is the subject of this appeal.

Christy A. McCormick is listed as an interested party in her personal capacity in the district court. According to counsel for appellant, Ms. McCormick's counsel has indicated that she does not intend to participate in this appeal. *See* Appellant's Certificate as to Parties, Rulings, and Related Cases 2 n.2 (Apr. 19, 2023).

Landmark Legal Foundation appeared in the district court as amicus curiae but has not filed briefs related to the motion filed by Eagle Forum Education & Legal Defense Fund, which is the subject of this appeal.

## B.   Rulings Under Review

The rulings under review are the following decisions issued by Judge Richard J. Leon: (1) a minute order denying Eagle Forum Education & Legal Defense Fund's request to access sealed materials while its motion to unseal was pending (May 6, 2022); (2) a memorandum opinion denying Eagle Forum Education & Legal Defense Fund's request to unseal the sealed materials in this case (Dkt. No. 188) (Nov. 14, 2022); and (3) a minute order denying Eagle Forum Education & Legal Defense Fund's motion for reconsideration of the

denial of the motion to unseal (January 18, 2023). The opinion and minute orders have not been published.

## C.    Related Cases

This Court previously granted relief to the plaintiffs on the merits. *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 4, 15 (D.C. Cir. 2016); *see also League of Women Voters of the U.S. v. Newby*, 671 F. App'x 820, 821 (Sept. 9, 2016). On remand, the district court vacated the Commission's decisions and remanded to the Commission. *See League of Women Voters of the U.S. v. Harrington*, 560 F. Supp. 3d 177, 181 (D.D.C. 2021).

This Court previously reversed the district court's order denying Eagle Forum Education & Legal Defense Fund's motion for permissive limited-purpose intervention and remanded for consideration of whether the sealed records should be unsealed. *See League of Women Voters of the U.S. v. Newby*, 963 F.3d 130, 132 (D.C. Cir. 2020).

We are unaware of any other related cases within the meaning of Rule 28(a)(1)(C).

*/s/ Caroline D. Lopez*
CAROLINE D. LOPEZ
Counsel for Appellees

**TABLE OF CONTENTS**

<u>Page</u>

GLOSSARY

STATEMENT OF JURISDICTION ............................................................. 1

STATEMENT OF THE ISSUES ................................................................. 1

PERTINENT STATUTES AND REGULATIONS ....................................... 2

STATEMENT OF THE CASE ................................................................... 2

    A.    Statutory Background ................................................................. 2

    B.    Factual Background & Prior Proceedings ................................... 3

            1.    Prior Litigation Regarding 2014 Decision Denying
Requests to Add State-Specific Instructions for
Documentary Proof of Citizenship ..................................... 4

            2.    Litigation Regarding 2016 Decision Approving
Requests to Add State-Specific Instructions for
Documentary Proof of Citizenship ..................................... 4

            3.    Eagle Forum's Limited-Purpose Motion to Intervene
to Unseal Materials ............................................................. 9

SUMMARY OF ARGUMENT ................................................................ 12

STANDARD OF REVIEW ..................................................................... 15

ARGUMENT ......................................................................................... 15

I.    The District Court Did Not Abuse Its Discretion in Denying Eagle
Forum's Motion to Unseal Documents ............................................... 15

    A.    The District Court Did Not Abuse Its Discretion in
Concluding That Unsealing Was Unwarranted Under the
*Hubbard* Factors ...................................................................... 16

    B.    Eagle Forum Offers No Basis for Finding That the District Court Abused Its Discretion ....................................................... 21

          1.    Advice by Government Litigation Counsel to an Agency It Is Tasked With Representing Does Not Provide A Basis for Overcoming Governmental Privileges.......................................................................... 21

          2.    Eagle Forum's Remaining Arguments Are Equally Unavailing ................................................................... 26

II.    The District Court Correctly Declined to Give Eagle Forum Access to the Sealed Materials as a Limited-Purpose Intervenor .......... 34

CONCLUSION ............................................................................... 37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**             <u>**Page(s)**</u>

*Application for Access to Video Exhibits, In re*,
   575 F. Supp. 3d 101 (D.D.C. 2021) ........................................................... 30

*Cable News Network, Inc. v. FBI*,
   984 F.3d 114 (D.C. Cir. 2021) ........................................... 11, 13, 15, 18, 31

*Colindres v. U.S. Dep't of State*,
   71 F.4th 1018 (D.C. Cir. 2023) ................................................................ 24

*Durant v. District of Columbia Gov't*,
   875 F.3d 685 (D.C. Cir. 2017) ............................................................... 31, 32

*Equal Emp't Opportunity Comm'n v. National Children's Ctr., Inc.*,
   98 F.3d 1406 (D.C. Cir. 1996) ............................................................... 3, 17

*Fish v. Schwab*,
   957 F.3d 1105 (10th Cir. 2020), *cert denied*, 141 S. Ct. 965 (2020) .............. 8-9

*Guardians Ass'n v. Civil Serv. Comm'n of City of N.Y.*,
   463 U.S. 582 (1983) ............................................................................ 22-23

*Hall v. CIA*,
   437 F.3d 94 (D.C. Cir. 2006) ................................................................. 15

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
   322 U.S. 238 (1944) ............................................................................ 24, 25

*Kobach v. U.S. Election Assistance Comm'n*,
   772 F.3d 1183 (10th Cir. 2014), *cert. denied*,
     135 S. Ct. 2891 (2015) ................................................................. 4
   135 S. Ct. 2891 (2015) ........................................................................... 4

*League of Women Voters of the U.S. v. Harrington*,
   560 F. Supp. 3d 177 (D.D.C. 2021) ....................................................... 8, 31

*League of Women Voters of the U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ................................................................ 7, 8
  963 F.3d 130 (D.C. Cir. 2020) ................................ 1, 2, 9, 10, 12, 16, 20, 35
  195 F. Supp. 3d 80 (D.D.C. 2016)........................................................ 5, 7
  238 F. Supp. 3d 6 (D.D.C. 2017) ............................................................ 8

*Leopold v. United States*,
  964 F.3d 1121 (D.C. Cir. 2020)................................................................ 17

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ................................................................ 33

*Metlife, Inc. v. Financial Stability Oversight Council*,
  865 F.3d 661 (D.C. Cir. 2017) ................................2-3, 3, 17, 18, 19, 20, 30

*National Broad. Co., In re*,
  653 F.2d 609 (D.C. Cir. 1981) .................................................................. 3

*Oceana, Inc. v. Ross*,
  920 F.3d 855 (D.C. Cir. 2019) ................................................................ 28

*Reporters Comm. for Freedom of the Press, In re*,
  773 F.2d 1325 (D.C. Cir. 1985)................................................................ 32

*Sealed Case, In re*,
  146 F.3d 881 (D.C. Cir. 1998) ................................................................ 27

*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) ................................................................ 27

*Transportation Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Federal R.R. Admin.*,
  10 F.4th 869 (D.C. Cir. 2021) ............................................................23, 28

*United States v. British Am. Tobacco Austl. Servs., Ltd.*,
  437 F.3d 1235 (D.C. Cir. 2006)................................................................ 36

*United States v. Chemical Found., Inc.*,
  272 U.S. 1 (1926) ................................................................................ 24

*United States v. Cojab*,
   996 F.2d 1404 (2d Cir. 1993) ................................................................ 34

*United States v. Hubbard*,
   650 F.2d 293 (D.C. Cir. 1980) ...........................2, 3, 9, 10, 11, 13, 16, 17, 18

*United States v. James*,
   No. 21-28-12 (APM), 2021 U.S. Dist. LEXIS 235358
   (D.D.C. Aug. 23, 2021) .......................................................................... 30

*United States v. Myers*,
   635 F.2d 945 (2d Cir. 1980) ................................................................... 30

*United States v. Thompson*,
   No. 89-3160, 1989 U.S. App. LEXIS 19909 (D.C. Cir. Oct. 13, 1989) ....... 30

**Statutes:**

5 U.S.C. § 552(b) ................................................................................ 33

28 U.S.C. § 516 .................................................................................... 5

28 U.S.C. § 519 ................................................................................... 26

28 U.S.C. § 1291 ................................................................................... 1

28 U.S.C. § 1331 ................................................................................... 1

52 U.S.C. § 20508 ................................................................................. 3

52 U.S.C. § 20508(b)(1) ......................................................................... 5

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ....................................................................... 1

Fed. R. Civ. P. 24(b) ............................................................................ 1, 9

## GLOSSARY

| | |
|---|---|
| Commission | Election Assistance Commission |
| Department | Department of Justice |
| Eagle Forum | Eagle Forum Education & Legal Defense Fund |
| JA | Joint Appendix |

**STATEMENT OF JURISDICTION**

Plaintiffs in the underlying litigation invoked the district court's jurisdiction under 28 U.S.C. § 1331. Eagle Forum Education & Legal Defense Fund (Eagle Forum) sought to intervene under Federal Rule of Civil Procedure 24(b) for the limited purpose of seeking to unseal certain judicial records. In a prior appeal, this Court held that Eagle Forum should be granted limited-purpose intervenor status and remanded to the district court to weigh whether the materials should be unsealed. On remand, the district court denied Eagle Forum's Renewed Motion to Unseal on November 14, 2022, and denied Eagle Forum's Motion for Reconsideration on January 18, 2023. Mem. Order (Nov. 14, 2022) (Op.) [JA 189-93], Minute Order (Jan. 18, 2023) [JA 27]. Eagle Forum filed a timely notice of appeal on March 17, 2023. Eagle Forum's Notice of Appeal [JA 194]; *see* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under the collateral-order doctrine. *See* 28 U.S.C. § 1291; *League of Women Voters of the U.S. v. Newby* (*League of Women Voters V*), 963 F.3d 130, 135 (D.C. Cir. 2020).

**STATEMENT OF THE ISSUES**

The current appeal arises from this Court's prior remand to the district court to consider Eagle Forum's motion to unseal certain materials, which were subject to the government's privilege claims, under this Court's six-factor

test based on *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980). The issues presented are:

1. Whether the district court abused its discretion in denying Eagle Forum's motion to unseal documents under the *Hubbard* factors, where the government had asserted privilege and the district court had resolved the underlying litigation without consideration of the sealed materials.

2. Whether the district court abused its discretion in declining to allow Eagle Forum—which had been granted limited intervention solely for the purpose of seeking to unseal—immediate access to the sealed materials while it briefed the question of whether the materials should be unsealed.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory Background

This Court has recognized a common law right of access to judicial records in civil litigation, including sealed briefing. *League of Women Voters V*, 963 F.3d 130, 135-36 (D.C. Cir. 2020). Although there is a strong presumption of public access to judicial records, "[t]hat presumption may be outweighed in certain cases by competing interests." *Metlife, Inc. v. Financial Stability Oversight*

*Council*, 865 F.3d 661, 665 (D.C. Cir. 2017). A court weighing a motion to unseal must therefore "consider[] the relevant facts and circumstances of the particular case" in weighing the following six factors:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Id.* (first quoting *In re National Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981); and then quoting *Equal Emp't Opportunity Comm'n v. National Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)) (citing *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980)).

## B.     Factual Background & Prior Proceedings

This case concerns determinations by the Election Assistance Commission (Commission) regarding the contents of "a mail voter registration application form for elections for Federal office." 52 U.S.C. § 20508. In particular, the Commission has been called upon to adjudicate requests by several States at different times to require applicants to provide documentation of their U.S. citizenship in the state-specific instructions on the federal voter registration form.

1. **Prior Litigation Regarding 2014 Decision Denying Requests to Add State-Specific Instructions for Documentary Proof of Citizenship**

In 2013, Kansas and Arizona requested that the federal voter registration form include citizenship-documentation requirements. At the time, the Commission had no seated Commissioners, Executive Director, or General Counsel, and no action was taken on the request. Arizona and Kansas then filed suit, and the District Court for the District of Kansas ordered the Commission to issue a final agency action. *See Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1188 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 2891 (2015). The Acting Executive Director, Alice Miller, then denied the States' requests. The Tenth Circuit upheld that determination, *Kobach*, 772 F.3d at 1188-89, and the Supreme Court denied certiorari, *Kobach v. U.S. Election Assistance Comm'n*, 135 S. Ct. 2891 (2015).

2. **Litigation Regarding 2016 Decision Approving Requests to Add State-Specific Instructions for Documentary Proof of Citizenship**

**a.** After the conclusion of the *Kobach* litigation, Alabama, Georgia, and Kansas submitted new requests to the Election Assistance Commission to add requirements of documentary proof of citizenship to the state-specific instructions on the federal voter registration form. The Commission's

Executive Director, Brian Newby, approved the requests. *See* Newby Letters [JA 90-95].

Several voting rights groups and individuals who sought to register to vote in Kansas (the only state enforcing the changes) brought suit in the District Court for the District of Columbia, seeking to enjoin the 2016 approvals of changes to the Federal Form. *See League of Women Voters of the U.S. v. Newby* (*League of Women Voters I*), 195 F. Supp. 3d 80, 86 n.7 (D.D.C. 2016). As relevant here, plaintiffs alleged that the Executive Director lacked authority to issue the approvals under the Help America Vote Act of 2002 and under the Commission's operative delegation policy, *see* Compl. ¶¶ 70-78 [JA 56-57], and that, in any event, the Executive Director had failed to consider whether the additional information was "necessary" under 52 U.S.C. § 20508(b)(1). *See* Compl. ¶¶ 87-96 [JA 58-59].

Appearing on behalf of the Commission, *see* 28 U.S.C. § 516, the Department of Justice consented to plaintiffs' request for a preliminary injunction, agreeing that remand to the Commission was necessary for a determination of whether the proposed changes were necessary under 52 U.S.C. § 20508(b)(1). Kansas and the Public Interest Legal Foundation intervened to defend the approval of the States' requests.

**b.** Shortly before the responsive briefing on the preliminary injunction was due, Kansas made an oral motion for discovery in the form of a deposition from Commissioner Christy A. McCormick regarding, among other topics, the prior denials of requests to add documentary proof-of-citizenship requirements that had been the subject of the *Kobach* litigation in the Tenth Circuit. *See* Feb. 29, 2016 Hr'g Tr. 8:21-9:9, 12:1-19 [JA 97-99]. The government objected that discovery was inappropriate, stating that Commissioner McCormick's testimony would be inadmissible because it was not part of the administrative record in this Administrative Procedure Act case and that it likely was subject to multiple governmental privileges, including the attorney-client privilege, the work product privilege, and the deliberative process privilege. *See id.* at 17:19-18:3, 18:23-19:12, 23:3-24:11 [JA 100-04].

Without ruling on these objections, the district court granted Kansas' motion in a minute order, permitting the parties two hours per side for a deposition to occur within the following two days. *See* Minute Order (Feb. 29, 2016) [JA 13]. The court also entered a protective order directing that "no party or individual may publicly disclose, on this court's docket or otherwise, any documents or information disclosed by [Commissioner McCormick], for which a party asserts a claim of privilege, until after the Court has ruled on any privilege dispute." Protective Order 1 [JA 82]. At the deposition, Ms.

McCormick provided testimony and certain exhibits over the privilege objections of counsel for the government.

**c.** In a hearing on how to proceed with the litigation, which was held shortly after the disputed deposition, Kansas conceded that the district court need not consider the sealed materials to resolve the merits of the case. *See* Mar. 9, 2016 Hr'g Tr. at 85:8-13 [JA 89] (Kansas acknowledging that the court "could get to the merits without addressing the e-mails and the statements by commissioners and stuff like that. . . . [The court] could leave that privileged, I suppose, and still resolve this case"). The court subsequently denied the preliminary injunction on the ground that plaintiffs had not shown that they would suffer irreparable harm in the absence of preliminary relief. *See League of Women Voters I*, 195 F. Supp. 3d at 93-95. The court's decision did not refer to the sealed material.

On expedited appeal, this Court reversed, concluding that plaintiffs had adequately demonstrated irreparable harm and were likely to succeed on the merits, and also that "the balance of the equities tips in their favor." *See League of Women Voters of the U.S. v. Newby* (*League of Women Voters II*), 838 F.3d 1, 11-12 (D.C. Cir. 2016). Kansas had sought to rely on sealed materials in this Court in support of its argument about whether the Executive Director had authority to issue the opinion, and had filed a sealed appendix. *See* Kansas's

Br. 42, *League of Women Voters of the U.S. v. Newby*, No. 16-5196 (D.C. Cir. Aug. 3, 2016). Both the majority, *League of Women Voters II*, 838 F.3d at 12, and the dissent, *id.* at 16 (Randolph, J., dissenting), declined to reach that issue—the only issue as to which the sealed materials arguably could have been relevant.

**d.** The district court never resolved that issue either—though it did initially remand the matter to get the Commission's view on the delegation question, *League of Women Voters of the U.S. v. Newby* (*League of Women Voters III*), 238 F. Supp. 3d 6 (D.D.C. 2017)—but instead granted plaintiffs' claims on summary judgment on the ground that the Executive Director had failed to consider whether the additional information was necessary, without reference to any of the sealed materials. *See League of Women Voters of the U.S. v. Harrington* (*League of Women Voters IV*), 560 F. Supp. 3d 177 (D.D.C. 2021). The court therefore remanded to the Commission to reconsider Georgia's and Alabama's requests, while noting that Kansas could not renew its request to the Commission in light of a separate decision by the Tenth Circuit holding that Kansas's "proof of citizenship requirement" is "unconstitutional" and therefore "permanently enjoin[ing] Kansas from enforcing" that requirement. *League of Women Voters IV*, 560 F. Supp. at 181 & n.3, 188-89 (citing *Fish v. Schwab*, 957 F.3d 1105, 1134–36 (10th Cir. 2020), *cert denied*, 141 S. Ct. 965

(2020)). The States have not pursued their requests further with the Commission.

### 3. Eagle Forum's Limited-Purpose Motion to Intervene to Unseal Materials

**a.** The present dispute arises because after this Court's first remand but before the district court's summary-judgment ruling, Eagle Forum sought to intervene in this litigation under Federal Rule of Civil Procedure 24(b) for the limited purpose of seeking to unseal Commissioner McCormick's deposition and sealed exhibits, as well as sealed references to those materials in court filings, citing the First Amendment and the common law right of access. The district court denied the motion, concluding that the sealed materials were not judicial records to which the right of access applies, without reaching the government's argument that, in any event, the six-factor balancing test set out in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), counsels against releasing the sealed information.

On appeal, this Court disagreed with the district court's holding that the materials were not judicial records, explaining that "every part of every brief filed to influence a judicial decision qualifies as a 'judicial record,'" and therefore concluding that "Eagle Forum may intervene for the limited purpose of seeking to unseal references to the McCormick deposition." *League of Women V*, 963 F.3d at 136. This Court, however, also "emphasize[d] that this

does not mean that those materials must be unsealed" because "[u]nder our decision in *Hubbard*, the district court will still need to determine whether countervailing interests, including the government's privilege claims, justify continued sealing." *Id.* (citing *Hubbard*, 650 F.2d at 323–24).

**b.** On remand, Eagle Forum first requested that the district court rule that Eagle Forum "be permitted access to the sealed materials under the current protective order," which the government opposed. Joint Status Report 1-2 [JA 176-77]. Eagle Forum acknowledged that it "does not dispute that a limited-purpose intervenor *can* brief the unsealing of documents the intervenor has not seen," but stated that its "briefing of these issues would be more illuminating if [it] could contest Defendants' claims of good faith after [it] has reviewed what Defendants seek to keep from public disclosure." *Id.* at 2. [JA 177]. The district court denied Eagle Forum's "request to access the sealed materials in order to prepare further briefing on its . . . motion to unseal the record." *See* Minute Order (May 6, 2022) [JA 26].

The district court then issued a memorandum opinion denying Eagle Forum's motion to unseal the documents. The court emphasized that "the parties disclaimed the Court's need to rely on [the sealed materials] to resolve the case" and that the court "did not rely" on the sealed materials in "resolving this matter on the merits." *See* Op. 4-5 [JA 192-93]. The district court noted

that this Court has recognized that the irrelevance of the sealed materials to the court's resolution of the litigation "can be the 'most important' element cutting *against* disclosure." *Id.* (quoting *Cable News Network, Inc. v. FBI,* 984 F.3d 114, 120 (D.C. Cir. 2021)). For the same reasons, the court found that the need for public access to the sealed materials "tips only 'modestly' in favor of unsealing." Op. 3 [JA 191] (quoting *Hubbard*, 650 F.2d at 317-18). And the court found that the fact that the government had raised substantial privilege objections to the disclosure of the sealed materials and the threat of future chilling of communications "between government officials and their statutorily-authorized litigation counsel" weighed against unsealing. Op. 4 [JA 192] (quotation marks omitted). The court also rejected Eagle Forum's argument that it needed to conduct ancillary procedures to resolve any privilege disputes—which had been unnecessary to the resolution of the underlying litigation—solely for the purpose of ruling on a limited-purpose intervenor's motion to unseal those documents, particularly because the intervenor had "raised only speculative claims of fraud irrelevant to the Court's resolution of the merits of this case." *Id.*

The district court denied Eagle Forum's motion to reconsider. Minute Order (Jan. 18, 2023) [JA 27]. The court explained that this Court's prior opinion did not mandate access to the sealed materials, explaining that "[t]o

the contrary, the D.C. Circuit 'emphasize[d] that [Eagle Forum's intervention] does not mean that those materials must be unsealed.'" *Id.* (second alteration in original) (quoting *League of Women Voters V*, 963 F.3d at 136). The court also explained that Eagle Forum "cannot now rescue itself from its previous position" in a Joint Status Report that it could brief the unsealing issue without such access. *Id.* And the district court rejected Eagle Forum's argument "that it has no way to verify the Court's statement in its . . . Memorandum Order that the sealed material has not been disclosed previously" because such arguments are "not a recognized basis to reconsider an order." *Id.* Nor had Eagle Forum "point[ed] to any intervening change of controlling law, any newly available evidence, or any clear error or manifest injustice that must be corrected through an amended judgment" or any "legal error made by the Court." *Id.*

## SUMMARY OF ARGUMENT

Intervenor Eagle Forum has moved for public disclosure of sealed materials that it acknowledges were not material to resolution of the underlying litigation. Indeed, the relevant materials do not pertain to the agency action that was at issue in this litigation, but rather to a different decision by a different decisionmaker two years earlier. The district court sealed those materials based on the government's objections that they related

to privileged communications between the agency and its Department of Justice litigation counsel in another case.

In a prior appeal, this Court concluded that redacted portions of filings referencing the sealed materials were judicial records but cautioned that this determination did not necessarily require unsealing. This Court instead instructed the district court to determine whether the public interest in the sealed materials asserted by Eagle Forum was outweighed by countervailing interests against disclosure, including the government's privilege claims, under *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980).

The district court did not abuse its discretion in concluding that the government's interest in protecting privileged materials from disclosure outweighs any interest in public access to the materials at issue, which were not relevant to the resolution of the litigation on the merits. Indeed, this Court recently explained that "the fact that a sealed document didn't affect a judicial decision[] . . . can be the most important element cutting *against* disclosure—by making a multi-factored analysis more straightforward than usual." *Cable News Network, Inc. v. FBI*, 984 F.3d 114, 120 (D.C. Cir. 2021) (quotation marks omitted). That principle strongly counsels against disclosure in this case, in which Eagle Forum seeks access to privileged information for its own sake rather than as a way to shed light on the conduct of the litigation. And there

can be no serious question that privilege claims by the government can justify continued sealing, as this Court acknowledged in remanding this case for consideration of those interests.

Eagle Forum counters that the district court abused its discretion because the sealed materials would allegedly reveal government misconduct in connection with a different Commission decision at issue in different litigation. The thrust of Eagle Forum's argument is that there was something improper about the assistance that Department of Justice litigation counsel provided to the Commission in connection with the Commission's decision in a prior administrative proceeding. In addition to being incorrect as a general matter, that contention is particularly anomalous here because the prior Commission decision was issued in response to a federal district court's order that the Commission must take action in the midst of ongoing litigation. The Commission was entitled to assistance from its counsel when it took actions relevant to active litigation, and the speculative suggestion that litigation counsel somehow prevented the Commission from exercising its own discretion is expressly and unequivocally refuted in the record in this case, through a declaration from the Commission official who made the relevant decision. Eagle Forum's remaining arguments are likewise without merit.

Finally, the district court also did not abuse its discretion in refusing to allow Eagle Forum—which had been granted limited intervention solely for the purpose of seeking to unseal materials—immediate access to the sealed materials while it briefed the question of whether the materials should be unsealed. A party cannot obtain access to sealed materials merely by seeking leave to intervene in order to obtain such access.

## STANDARD OF REVIEW

This Court reviews the denial of a motion to unseal for abuse of discretion, while reviewing "de novo whether the district court applied the proper legal standard in exercising its discretion." *See Cable News Network, Inc. v. FBI*, 984 F.3d 114, 117 (D.C. Cir. 2021) (quotation marks omitted). This Court reviews denials of motions for reconsideration for abuse of discretion. *See, e.g.*, *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006).

## ARGUMENT

I. **The District Court Did Not Abuse Its Discretion in Denying Eagle Forum's Motion to Unseal Documents**

Intervenor Eagle Forum seeks access to information that concededly "was not material" to resolving this litigation. Eagle Forum's Br. 24. Indeed, the materials at issue do not refer to the agency action that was at issue in this litigation, but rather to a different decision by a different decisionmaker two years earlier. The district court had sealed those materials based on the

government's objections that they reflected privileged communications between the Commission and its Department litigation counsel. The district court did not abuse its discretion in concluding that the materials should remain sealed.

## A.     The District Court Did Not Abuse Its Discretion in Concluding That Unsealing Was Unwarranted Under the *Hubbard* Factors

In a prior appeal, this Court concluded that the sealed materials at issue constituted judicial records to the extent they had been incorporated into briefing filed in the litigation, while also "emphasiz[ing] that this does not mean that those materials must be unsealed." *League of Women Voters V*, 963 F.3d 130, 136 (D.C. Cir. 2020). This Court therefore instructed the district court "to determine" whether the public interest in access to these judicial records asserted by Eagle Forum was outweighed by "countervailing interests, including the government's privilege claims," by applying the standard set out by this Court in *United States v. Hubbard*, 650 F.2d 293, 323-24 (D.C. Cir. 1980). *League of Women Voters V*, 963 F.3d at 136.

The district court did not abuse its discretion in applying those factors on remand. As the court recognized, the substantial interests in confidentiality raised by the government's privilege claims outweighed the need for public

access to records that concededly were irrelevant to the court's resolution of this litigation. *See* Op. 3-5 [JA 191-93]; Eagle Forum's Br. 23-24.

While "there is a 'strong presumption in favor of public access to judicial proceedings,' including judicial records[,] . . . that presumption may be outweighed by competing interests." *Leopold v. United States*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *MetLife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017)). In this Circuit, it is well-established that in determining whether public access to particular records should be granted, courts should consider six factors drawn from the interests identified in the seminal *Hubbard* case:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*MetLife*, 865 F.3d at 665 (quoting *Equal Emp't Opportunity Comm'n v. National Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)). Because that determination is grounded in the "relevant facts and circumstances of the particular case," it is "best left to the sound discretion of the trial court." *Hubbard*, 650 F.2d at 316-17 (quotation marks omitted).

The *Hubbard* inquiry is designed, at its core, to balance any interest in confidentiality of sealed material against the public interest in access to judicial proceedings. *See, e.g.*, *Hubbard*, 650 F.2d 314-18. As the district court recognized, the government's interest in protecting privileged materials from disclosure easily outweighs any interest in public access to the materials at issue here.

As this Court has recognized, when the sixth *Hubbard* factor—"the purposes for which the documents were introduced," *MetLife*, 865 F.3d at 665 (quotation marks omitted)—"highlights the fact that a sealed document didn't affect a judicial decision, it can be the 'most important' element cutting *against* disclosure—by making a multi-factored analysis more straightforward than usual." *Cable News Network, Inc. v. FBI*, 984 F.3d 114, 120 (D.C. Cir. 2021). In *Hubbard* itself, this factor was "the single most important element" because the materials at issue—documents seized during a search whose legality was challenged—were relevant only to a suppression hearing that sought to exclude those very documents from the proceedings. *Hubbard*, 650 F.2d at 321.

This case, if anything, presents an even more "straightforward" analysis. The documents at issue were not relevant to the resolution of this litigation, so much so that counsel for Kansas—the party that obtained the relevant discovery—acknowledged that the court need not consider the contested

materials, agreeing that the district court "could leave that privileged, I suppose, and still resolve this case." *See* Mar. 9, 2016 Hr'g Tr. at 85:8-13 [JA 89]; Op. 3 [JA 191] (noting that "the parties agreed that I did not need to consider the sealed material to resolve the merits of the case"). And the district court expressly stated that it "did not rely on" the sealed materials in "resolving this matter on the merits." *See* Op. 5 [JA 193]. The sixth *Hubbard* factor thus counsels strongly against disclosure in this case.

For similar reasons to those that informed the district court's analysis of the sixth factor, the court also properly recognized that the first *Hubbard* factor—"the need for public access to the documents at issue," *MetLife*, 865 F.3d at 665 (quotation marks omitted)—counsels only "modestly" in favor of disclosure. Op. 3 [JA 191]. As the court explained, the public could readily understand the entirety of the judicial proceedings without reviewing these materials, as the public had access to the portions of the record on which the court relied in making its decision, including the entire administrative record on which the agency's decision was premised. *See id.* And the fact that the sealed information had not been previously disclosed rendered the second *Hubbard* factor neutral in this case. *Id.*

On the other side of the ledger, the district court properly concluded that the interrelated third through fifth factors—whether anyone has objected to the

disclosure, the strength of the privacy interests involved, and the possibility of prejudice to the objector from disclosure, *MetLife*, 865 F.3d at 665—counsel against unsealing in this case. Eagle Forum seeks disclosure of deposition testimony and exhibits reflecting communications between Department of Justice litigation counsel and an agency it is charged with representing in court and deposition exhibits consisting of internal Commission memoranda, implicating the attorney-client, work-product, and deliberative process privileges. On that basis, the government opposed the production of those materials during discovery and insisted on a protective order sealing the materials.

There can be no serious dispute that, as the district court explained, "claims of attorney-client privilege, attorney work product, and deliberative-process privilege are cognizable interests" that weigh against unsealing under the fourth *Hubbard* factor. Op. 3 [JA 191]; *cf. League of Women Voters V*, 963 F.3d at 136 (remanding for consideration of whether "the government's privilege claims[] justify continued sealing" under the *Hubbard* factors). Unsealing materials subject to a claim of privilege creates a risk of "lasting prejudice to the government by chilling future communications among government officials and especially between government officials and their statutorily-authorized litigation counsel," should such privileged

communications be revealed over the government's objection. Op. 4 [JA 192] (quotation marks omitted).

The district court acted well within its discretion in concluding, after balancing these factors, that disclosure was not warranted. As noted, the purpose of the right of access is to ensure that the public can understand judicial proceedings, and that right was not impeded by the sealing here. The government's weighty interest in protecting privileged communications easily outweighs any interest the public may have in materials that the district court "did not rely on" in resolving the litigation, Op. 5 [JA 193], and that pertained to issues that this Court did not reach in resolving the appeal.

### B. Eagle Forum Offers No Basis for Finding That the District Court Abused Its Discretion

#### 1. Advice by Government Litigation Counsel to an Agency It Is Tasked With Representing Does Not Provide A Basis for Overcoming Governmental Privileges

Eagle Forum's primary response is to impugn the government's conduct in connection with separate litigation, urging in particular that the records at issue here will reveal some government malfeasance that undermines the applicability of the relevant privileges and creates a greater public need for access to these materials. *See* Eagle Forum's Br. 17-25, 42-45, 47, 48. The district court properly rejected that argument. Op. 3-4 [JA 191-92].

Eagle Forum's argument is that the Election Assistance Commission relied too heavily on assistance from the Department of Justice in issuing a decision in a prior administrative proceeding presenting issues similar to the merits issues in this case. *See* Eagle Forum's Br. 17-20. As Eagle Forum acknowledges, however, that agency decision was issued in the middle of active litigation in which the Department was acting as the Commission's counsel; indeed, the decision was issued in response to an order from a federal district court requiring the Commission to take action. *See* Eagle Forum's Br. 18.

Eagle Forum does not appear to contend—nor could it plausibly argue— that there was anything improper about an agency's consulting with its litigation counsel when drafting an agency decision that was already the subject of active litigation. *Cf.* Eagle Forum's Br. 45 (acknowledging it is "certainly possible—under different circumstances—that [Department of Justice] lawyers could have been working with [Commission] staff in the post-*ITCA* remand—and in *Kobach*—to pursue [*the Commission's*] nonpartisan policies and mission"). As the Supreme Court and this Court have recognized, there is nothing surprising about an agency's consulting with the Department of Justice in formulating a decision within the agency's bailiwick. *See, e.g.*, *Guardians Ass'n v. Civil Serv. Comm'n of City of N.Y.*, 463 U.S. 582, 592-93, 592

n.13 (1983) (White, J.) (recognizing agency regulations as "valid" while noting that "the [Department], which had helped draft [the governing statute], assisted seven agencies in the preparation of [the] regulations"); *cf. Transportation Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Federal R.R. Admin.*, 10 F.4th 869, 878-79 (D.C. Cir. 2021).

Eagle Forum speculates that the Department went beyond assisting the Commission and instead made the relevant decision itself and then fraudulently contended that the Commission had done so. *See* Eagle Forum's Br. 17-23. As the district court recognized, there is no basis in the record to support that "speculative" and extraordinary claim. Op. 4 [JA 192].

To the contrary, Ms. Miller, the relevant Commission decisionmaker, averred that she reviewed all the relevant sources—including prior Commission precedents, relevant statutory and regulatory sources, public comments, and advice from litigation counsel—"[i]n reaching [her] decision." *See* Miller Decl. ¶¶ 9-11 [JA 84-85]. Her explanation that she chose to "consult[] with and receive[] assistance from the Commission's litigation counsel at the United States Department of Justice" "because the case was in active litigation and [she] was deciding the States' requests pursuant to a court order" refutes Eagle Forum's speculative claim that the Department of Justice

somehow commandeered the Commission instead of providing advice. *Compare* Miller Decl. ¶ 10 [JA 85], *with, e.g.*, Eagle Forum's Br. 12, 18, 41-42.

Eagle Forum responds by citing a declaration from Ms. Miller's successor—who was not employed at the Commission at the time that the relevant decision was made and the relevant communications occurred—which expressed dissatisfaction with the decision and speculated about how it was made. *See* Eagle Forum's Br. 4, 13, 17, 36 (relying on Newby Decl. ¶ 22 [JA 64]). The district court did not abuse its discretion in declining to credit such speculation, particularly in the face of firsthand sworn testimony from the decisionmaker herself. It is well established that "because courts 'presume' that 'public officers' have 'properly discharged their official duties,' a litigant must provide 'clear evidence' of bad faith." *Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1025 (D.C. Cir. 2023) (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14-15 (1926)). Eagle Forum has not come close to satisfying that standard here.

Eagle Forum's reliance on the Supreme Court's decision in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 250 (1944), highlights the error in its analysis. There, a patent applicant sought to bolster its application by creating the false impression that a glowing article about its product had been written by a "disinterested expert," when in fact agents of the applicant had

written the article and persuaded someone else to sign it. *Id.* at 240. Here, by contrast, there was no false representation that the Commission issued its decision without input from its Department of Justice litigation counsel. Such input, and consultation with other interested parts of the federal government in general, are a regular part of governance and do not mean that the agency's final decision is not its own or that it is committing fraud on a court to present the final decision as such. Indeed, as noted above, even Eagle Forum acknowledges that there is nothing inherently nefarious about consulting litigation counsel in the course of making an agency decision.

To the extent Eagle Forum's accusations about a decision-making process related to a 2014 Commission decision are relevant to a proper analysis in this case involving a 2016 Commission decision, they only underscore the degree to which Eagle Forum seeks to probe the internal workings of the government to ascertain what advice was given by litigation counsel, how internal government decisions were made, and what steps were taken by government attorneys in the course of active litigation. As the district court recognized, Eagle Forum's rule would undermine the purpose of these privileges by chilling such communications. *See* Op. 4 [JA 192]. It would invert the privilege doctrines to allow Eagle Forum's claim of too much coordination to give rise either to public access to the communications between counsel and

client agency or to impose burdensome proceedings to establish that the
communications were in fact proper. These matters strike at the heart of the
relevant privileges and certainly do not provide a basis to override those
privileges or for Eagle Forum's argument that there is a greater need for public
access the sealed materials despite their immateriality to the underlying
litigation.

## 2. Eagle Forum's Remaining Arguments Are Equally Unavailing

Eagle Forum's other scattershot criticisms of the district court's decision
likewise fail to show any abuse of discretion.

**a.** Eagle Forum does not provide any basis for finding that the
government's privilege claims should be discounted as invalid.

There is no basis for Eagle Forum's extraordinary view that there was
"no relevant attorney-client relationship" between the Commission—which
lacks independent litigating authority—and the Department of Justice counsel
that is statutorily assigned to represent the Commission in litigation, including
the very litigation that gave rise to the decision at issue. *Compare* Eagle
Forum's Br. 40, *with* 28 U.S.C. § 519 (directing Department of Justice to
supervise all litigation except where otherwise authorized by law). Indeed, Ms.
Miller consulted with the Department precisely "because the case was in active
litigation and [she] was deciding the States' requests pursuant to a court

order." *See* Miller Decl. ¶¶ 10-12 [JA 85]. And Eagle Forum's assertion that

litigation counsel advising on a decision that was the subject of active litigation

was not "acting in a legal capacity," Eagle Forum's Br. 40, is equally

baseless—even apart from the fact that such an argument would not defeat the

deliberative process privilege. *See, e.g.*, *In re Sealed Case*, 146 F.3d 881, 886-87

(D.C. Cir. 1998) (holding that the work product privilege applies to advice

from counsel on a transaction even "prior to the emergence of specific claims"

because it is then "that lawyers are best equipped either to help clients avoid

litigation or to strengthen available defenses should litigation occur"); *Tax

Analysts v. IRS*, 117 F.3d 607, 619-20 (D.C. Cir. 1997) (holding that "[a]ny part

of" a certain type of Internal Revenue Service memorandum that is "prepared

in anticipation of litigation or for trial . . . is protected by the work product

doctrine").

Nor is there any basis for believing that the privilege has been waived.

Although Eagle Forum speculates that the materials may have been

disseminated in a way that would defeat the claim of privilege, *see* Eagle

Forum's Br. 45-46, it cites no evidence to support that assertion, much less

evidence that would override the declaration of the Commission

decisionmaker attesting that "[t]hese communications were confidential (*i.e.*,

among only counsel and Commission staff and contractors)." Miller Decl. ¶ 12 [JA 85].

Eagle Forum's efforts to resist the invocation of the deliberative process privilege likewise miss the mark. *See* Eagle Forum's Br. 48-49. This Court's precedents squarely foreclose Eagle Forum's argument that privileged documents are part of the administrative record in Administrative Procedure Act litigation, *see Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019), and there is no basis for finding any exception to that principle here. Indeed, this Court has treated materials created by a private law firm at the request of a federal agency as deliberative materials properly excluded from the administrative record for a regulation. *Transportation Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers*, 10 F.4th at 878-79. This Court rejected arguments that the firm's involvement was improper even though the firm had previously represented regulated entities, noting that a "strong showing of bad faith or improper behavior" would be required "to overcome the exclusion of deliberative documents from the record." *Id.* at 878 (quotation marks omitted). This case is even more straightforward, as the communications are within the government, with lawyers whose only obligation was to the United States; there is no other client with potentially conflicting interests. Nor does Eagle

Forum provide any reason to believe the government relied on "DRAFT" markings standing alone in claiming the privilege. *See* Eagle Forum's Br. 49.

**b.** Eagle Forum's observation that only the government, and not third parties, have objected to unsealing the documents is unremarkable. *See* Br. 36-37. No other party would have any evident need to protect the government's privileged communications, and Eagle Forum cites no case for the surprising proposition that a party cannot protect its own privileged communications merely because other parties do not join its objection to the disclosure of privileged materials. Eagle Forum likewise cites no authority agreeing with its apparent view that the Commission must conduct a formal vote to avoid having privileged material disclosed over the objection of its litigation counsel. Eagle Forum's Br. 37.

**c.** Eagle Forum's suggestion that some of the sealed information has already been disclosed highlights its misunderstanding of the relevant inquiry. *See* Eagle Forum's Br. 34-36. There is no serious contention that the privileged information discussed in the sealed materials has already been disclosed to the public; that is what Eagle Forum has intervened to learn. The status of the sealed materials in this case is entirely unlike the cases on which Eagle Forum relies, in which sealed materials were either played in a courtroom or extensively described in public briefing. *See* Eagle Forum's Br. 35-36 (first

citing *United States v. Thompson*, No. 89-3160, 1989 U.S. App. LEXIS 19909, at *3 (D.C. Cir. Oct. 13, 1989) (quoting *United States v. Myers*, 635 F.2d 945, 952 (2d Cir. 1980)); then citing *In re Application for Access to Video Exhibits*, 575 F. Supp. 3d 101, 110 (D.D.C. 2021); and then citing *United States v. James*, No. 21-28-12 (APM), 2021 U.S. Dist. LEXIS 235358, at *5-6 (D.D.C. Aug. 23, 2021)). Eagle Forum's suggestion that the sealed materials might "confirm[]" what Eagle Forum suspects based on other record evidence, Eagle Forum's Br. 36, makes clear that it is not simply seeking access to information that is already public in another form. Eagle Forum seeks privileged information for its own sake, rather than seeking a judicial filing that would shed light on the conduct of this litigation.

**d.** Eagle Forum questions the district court's assessment of the sixth *Hubbard* factor—"the purposes for which the documents were introduced during the judicial proceedings," *MetLife*, 865 F.3d at 665 (quotation marks omitted)—by emphasizing that Kansas originally introduced the evidence with the intention that the district court rely on it. *See* Eagle Forum's Br. 50-51, 53. But Eagle Forum ignores that, as noted above, Kansas had also conceded that the case could be resolved without reference to the sealed materials, and that the district court expressly confirmed that it "did not rely" on those materials in the opinion resolving the litigation, Op. 5 [JA 193], in which the court

determined on summary judgment that at least two organizational plaintiffs had standing before reversing and remanding based on an issue for which the sealed materials were irrelevant, *see League of Women Voters IV*, 560 F. Supp. 3d 177, 184 n.8, 185-88 (D.D.C. 2021). It is thus unusually clear in this case that the sealed material "didn't affect a judicial decision," which makes the *Hubbard* inquiry "straightforward." *Cable News Network*, 984 F.3d at 120.

**e.** Eagle Forum also fails to explain how it was an abuse of discretion for the district court to follow this Court's instructions to apply the *Hubbard* balancing test to determine whether to unseal the materials, rather than analyzing the motion under some purportedly different test under the First Amendment or as an equitable sanction. *See* Eagle Forum's Br. 24-26. As an initial matter, Eagle Forum did not argue that one of these alternate theories supplanted the *Hubbard* analysis at any point before this appeal, and the arguments are thus not properly before the Court. *See, e.g.*, *Durant v. District of Columbia Gov't*, 875 F.3d 685, 695 (D.C. Cir. 2017).

In any event, Eagle Forum's belated contentions are meritless. This Court has already held that "[t]o the extent a First Amendment right to post-judgment civil records exists, it does not exceed[] . . . the traditional common law right," which forecloses any argument that the First Amendment's narrow tailoring test requires the court to employ a different kind of procedure in

unsealing cases. *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1339 (D.C. Cir. 1985). And the idea that the government should be sanctioned just repackages Eagle Forum's baseless claim that the government's conduct in prior litigation reflected some impropriety.

**f.** Finally, Eagle Forum briefly contends that the government should be compelled to segregate the privileged material in the contested materials from non-privileged information, file redacted versions, and then allow Eagle Forum to "challenge the redactions." Eagle Forum's Br. 26. As an initial matter, Eagle Forum's motion to unseal merely argued that the government should be required "to defend, *document by document*, continuing the seal here." *See* Dkt. No. 185-2, at 5; *see also* Dkt. No. 187, at 7 (arguing that the privilege should be assessed "on a document-by-document basis," with the government bearing the burden "to show cause why a document—or portion thereof— should remain sealed"). Eagle Forum's novel argument that the government must instead produce redacted versions of documents containing privileged materials—other than any briefs that had already been redacted as part of the underlying litigation—thus is not properly before the Court. *See, e.g.*, *Durant*, 875 F.3d at 695.

And even now, Eagle Forum does not explain why a redacted version would provide any meaningful information, given that its asserted interest is in

precisely the matters that are subject to privilege, and given that the sealed materials focused on those matters rather than containing readily segregable information on other topics of significance. *See, e.g.*, Eagle Forum's Br. 17 (arguing that public access is necessary because the "sealed records" would "show[] that [the Department of Justice]—not [the Commission]—wrote" the 2014 Commission decision). Eagle Forum's suggestion that "the federal government cannot claim privilege over the deposition questions that the opposing parties put to the deponent," Eagle Forum's Br. 26, highlights the fruitlessness of this endeavor: the questioning might shed light on the witness's prior statements in the deposition, and if it did not, it is unclear what the purpose of revealing it might be. Even the Freedom of Information Act, which (unlike the common-law right of access) has an express and longstanding requirement to segregate privileged material from material that is eligible for public release, 5 U.S.C. § 552(b), does not require such pointless endeavors. *See Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977) ("[A] court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content.").

Eagle Forum's insistence that it be permitted to challenge the redactions also gives rise to the possibility of a burdensome ancillary proceeding to

resolve "potential privilege disputes" about sealed materials that did not affect the district court's resolution of the litigation on a different ground. *See* Op. 3 [JA 191]. Because the production of redacted information would not advance the interest in public understanding of judicial proceedings, Eagle Forum cannot justify the burden of creating redacted copies and then litigating the propriety of the redactions in this case. The lone (out-of-circuit) case it cites for its position approved of a district court's consideration and rejection of the feasibility of redaction in a case involving sealed records relating to a hearing in a criminal matter. *United States v. Cojab*, 996 F.2d 1404, 1409 (2d Cir. 1993). It does not stand for the proposition that the district court abused its discretion here by failing to consider the possibility of redaction in a civil case in which the records were not relevant to the resolution of the litigation, especially when the issue was not properly raised.

## II. The District Court Correctly Declined to Give Eagle Forum Access to the Sealed Materials as a Limited-Purpose Intervenor

The district court likewise acted well within its discretion in declining to give Eagle Forum access to the sealed materials before any determination had been made as to whether those materials should be disseminated outside of the original parties and in denying its motion to reconsider that decision. It would be remarkable if a nonparty could obtain access to sensitive materials merely

by filing a motion to unseal and claiming a need to examine that material to test the legitimacy of the objection to unsealing.

Eagle Forum identifies no case that has provided limited-purpose intervenors with access to sealed materials for that purpose. The district court's common-sense approach here mirrors the routine practice in Freedom of Information Act litigation, in which the requestors do not get to access the government documents that are the focus of the litigation to determine whether the government has properly claimed Exemption 5, which encompasses the government's litigation privileges.

Nor did the district court violate any mandate of this Court. *See* Eagle Forum's Br. 27-29. This Court did not direct the district court to make the documents available to Eagle Forum but rather directed the district court to allow Eagle Forum to "intervene for the limited purpose of seeking to unseal references to the McCormick deposition" while "emphasiz[ing] that this does not mean that those materials must be unsealed," *League of Women Voters V*, 963 F.3d at 136. In accordance with the Court's mandate, the district court allowed Eagle Forum to intervene for a limited purpose. It is Eagle Forum that ignores this Court's prior decision by asserting that it is "a full participant in the lawsuit," Eagle Forum's Br. 27 (emphasis omitted) (quotation marks omitted), when this Court made clear that its intervention was only for a

limited purpose. *See United States v. British Am. Tobacco Austl. Servs., Ltd.*, 437 F.3d 1235, 1237 (D.C. Cir. 2006) (recognizing that an entity that has only been granted intervention for a limited purpose is "not a full party to the suit").

The district court also was not required to grant Eagle Forum access under the original protective order, which was entered to facilitate discovery between the parties that were engaged in fast-paced preliminary-injunction litigation. Protective Order 1 [JA 82]. That order was issued before Eagle Forum was a party of any kind and did not purport to address the level of access that would be granted to a party that sought to intervene at a later time. And the district court did not abuse its discretion in refusing to reconsider its determination that Eagle Forum should litigate the motion without access to the materials, especially in light of Eagle Forum's express acknowledgment that it could do so. Minute Order (Jan. 18, 2023) [JA 27].

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

DANIEL TENNY

*/s/ Caroline D. Lopez*
CAROLINE D. LOPEZ
*Attorneys, Appellate Staff*
*Civil Division, Room 7535*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4825*
*caroline.d.lopez@usdoj.gov*

November 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,987 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Calisto MT 14-point font, a proportionally spaced typeface.

*/s/ Caroline D. Lopez*
Caroline D. Lopez

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court of

Appeals for the District of Columbia Circuit by using the appellate CM/ECF

system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Caroline D. Lopez*
Caroline D. Lopez

# ADDENDUM

# TABLE OF CONTENTS

28 U.S.C. § 519 ............................................................................ A1

**28 U.S.C. § 519**

### § 519. Supervision of litigation

Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.